## SARAH HICKEY *vs.* BOSTON AND LOWELL RAILROAD COMPANY

A traveller by railroad cannot maintain an action against a railroad company to recover damages for a personal injury sustained by him in consequence of his voluntarily and unnecessarily standing upon the platform of a passenger car, while the train is in motion.

It was the custom to uncouple the engine and smoking car from the rest of a passenger train over a railroad, on approaching a certain station, so that the former might be switched off upon a side track, and the ordinary passenger cars might run slowly upon the main track to the station; and passengers in the smoking car were in the habit, just before the uncoupling, of passing from the smoking car to the platform of the passenger car just behind it, and standing there until the train stopped at the station. This was done by the express permission of the conductor and brakemen, and without objection from the superintendent and directors, who knew of the practice. *Held*, that a passenger who, in conformity to this custom, had passed from the smoking car and was standing upon the platform of the passenger car just behind it, and who received a personal injury from a collision, after the uncoupling had taken place, was guilty of such negligence that he could not maintain an action against the railroad company to recover damages therefor.

TORT to recover damages for a personal injury sustained by Thomas Hickey, the plaintiff's intestate, while riding upon a passenger car of the defendants.

At the trial in this court, before *Chapman, J.,* there was evidence tending to show that the defendants were in the habit of running a passenger train from Boston to Woburn Centre and back; that they had a smoking car which ran in front of the other passenger cars; that about five hundred feet before coming into the station in Woburn Centre the smoking car was disconnected from the other passenger cars, and the engine and smoking car switched off upon a side track, while the other passenger cars would continue upon the main track until they reached the station; that there was also another side track for freight, between the place of uncoupling the smoking car from the other passenger cars and the station, the switch for which was left unfastened, and when unfastened the rails were liable to be moved from their proper place by the passing of an engine; that on the occasion in question the engine and smoking car ran off upon the wrong track in consequence of the displacement of the rail and switch, and a part of the smoking car was thrown across the main track; and that Thomas Hickey had been riding in the smoking car, and just before it was uncoupled he left it and with other passengers stepped upon the front platform of the

passenger car, with the intention of riding in that position into the station. The passenger car was proceeding at the rate of about five miles an hour, and ran against the smoking car while Hickey and others were in that position, and this collision caused an accident by which both of Hickey's legs were broken, and he soon afterwards died. He went from the smoking car to the platform of the passenger car in order to avoid the inconvenience and delay which would be occasioned by remaining in the smoking car. The evidence tended to show that the collision was caused by the negligence of the defendants in the management of the switch.

The plaintiff offered to show that it had been the practice of passengers on the train, in the smoking car, to come out of that car just before it was uncoupled, and go upon the platform of the forward passenger car; and, after the smoking car and engine had been uncoupled and switched off, to ride into the station in that position; that this had been the practice for a long time prior to the time of the accident, and that it was so at that time; that this was done with the knowledge and consent and by the permission of the authorized managers of the train, and of the conductor of the same; that the practice was known to the superintendent and directors of the road, and that the conductor and brakemen were on the platform with Hickey at the time of the accident, and did not object to his remaining there.

The plaintiff's counsel, on inquiry from the court, and in further discussion of the matter, stated that he proposed to show an express permission and consent to such practice or custom by the conductors and brakemen, but only an implied one from the superintendent and directors of the road; that the platform of the passenger car was constructed in the ordinary way and form of such cars; that the plaintiff was accustomed to ride over the said route, and was acquainted with the alleged practice and custom; that if he had remained in the smoking car he would have been switched off on a side track, delayed, and finally only carried to the rear end of the passenger car; that, when uncoupled, the passenger car had only momentum enough to carry it into the station. and could be easily managed by the brakes,

that the distance in was so short that there was no time or occasion to go in and take a seat in the passenger car; and that, under the circumstances, the platform was not, as a matter of fact, a dangerous place in which to ride into the depot, under all the existing circumstances of the case.

The judge ruled that the evidence was not material or admissible, unless it should go so far as to prove that the platform was a place provided by the directors or superintendent for passengers to ride upon; that it is so well known to be a dangerous place for passengers to ride upon, that they occupy it at their own risk; and it is careless to ride there, even though the conductor and brakemen know the fact, and do not say anything about it to the passengers, or if they consent to it, and though the superintendent and directors know that such is the practice, and do not take action necessary to break it up; that if the jury should find from this non-interference that there was an implied license from the directors or superintendent to the plaintiff to stand on the platform, yet, if nothing more was shown, it was a license to stand there at his own risk, there being no evidence that there were not vacant seats inside the car.

Upon this ruling the plaintiff did not desire to go to the jury; and the case was reserved for the full court, for a nonsuit to be entered if the ruling was correct.

*A. A. Ranney*, for the plaintiff, cited, besides cases cited in the opinion, *Meesel* v. *Lynn & Boston Railroad*, 8 Allen, 234, and cases cited; *Bigelow* v. *Rutland*, 4 Cush. 247; *Willis* v. *Long Island Railroad*, 34 N. Y. 670; *Carroll* v. *New York & New Haven Railroad*, 1 Duer R. 579.

*J. G. Abbott*, (*B. Dean* with him,) for the defendants.

WELLS, J. It is well settled that a party cannot recover for injuries caused by negligence, if he himself failed to exercise proper care, and his own negligence contributed to the result. It is also well settled that the plaintiff must show affirmatively that he was in the exercise of due care upon his own part. *Lane* v. *Crombie*, 12 Pick. 177. *Carsley* v. *White*, 21 Pick. 254. *Callahan* v. *Bean*, 9 Allen, 401. If the injury happen while the party is occupying a place provided for the accommodation of

passengers, nothing further is ordinarily necessary to show due care. But when the plaintiff's own evidence shows that he had left the place assigned for passengers, and was occupying an exposed position, and that the injury was due in part to the fact of such position, he must necessarily fail, unless he can also make it appear, upon some ground of necessity or propriety, that his being in that position was consistent with the exercise of proper caution and care on his part. The front platform of a steam railway car, coming into a station, detached from the train, where the approach is complicated by side tracks, turnouts and switches, and rendered more liable to accident by the operation of breaking up and transposing the train while in motion, cannot be otherwise, comparatively, than a position of exposure.

The plaintiff proposed to show that " the platform was not, as a matter of fact, a dangerous place in which to ride into the depot, under all the existing circumstances of the case." But to do that she must exclude from " the existing circumstances of the case " the fact of the accident which threw the forward car across the track, as well as the liability to similar accidents which always exists, and which cannot be foreseen nor guarded against by the passenger. The chances of injury are comparatively few, even in the most exposed positions. But a passenger is not justified in incurring risks unnecessarily, however rare the chances may be that he will suffer by it. *Todd* v. *Old Colony Railroad*, 3 Allen, 18 ; *S. C.* 7 Allen, 207. The apparent danger in the case just cited was certainly less than in the one at bar. If, then, the position upon the platform was taken voluntarily, and without reasonable cause of necessity or propriety, the plaintiff fails to show that her intestate was in the exercise of due care and caution. An eager desire to be first in, to arrive at the front rather than at the rear of the train, is certainly not such reasonable cause. Ordinarily no accident occurs to those who rush out of the train, or rush into the cars at stations, before the train fairly comes to a stop, or after it is in motion again ; but it cannot now be questioned that those who do so take upon themselves all the risks which attend such a practice,

*Gavett* v. *Manchester & Lawrence Railroad,* 16 Gray, . The excuse for such an attempt was stronger in the case of *Lucas* v. *New Bedford & Taunton Railroad,* 6 Gray, 64, than it was in the present case.

That the intestate and others were accustomed to take this mode of entering the station did not tend to show that it was safe or prudent for him to do so. Nor would the implied assent of the officers of the corporation, arising from knowledge and acquiescence, nor even the express consent and permission of the conductor of the train, change the relations between the parties, and their several obligations. It is not enough for the plaintiff to show that Hickey was rightfully upon the platform. Because he might rightfully occupy whatever place the conductor should permit, it does not follow that he would do so at the risk exclusively of the corporation. If sufficient and suitable provision be made within the cars for all the passengers, the managers of the train are not under obligation to restrict them to their proper places, nor to prevent them from acts of imprudence. If they voluntarily take exposed positions, with no occasion therefor, nor inducement thereto, caused by the managers of the road, except a bare license by non-interference, or express permission of the conductor, they take the special risks of that position upon themselves. *Sweeny* v. *Old Colony & Newport Railroad,* 10 Allen, 368. The court are of opinion, therefore, that the plaintiff's testimony failed to furnish any evidence of proper care on the part of her intestate ; and that the rulings at the trial were right. A nonsuit must accordingly be entered.