LOREN P. JUDKINS *vs.* MAINE CENTRAL RAILROAD COMPANY.

Kennebec.    Opinion June 18, 1888.

*Railroads. Brakemen. Defective cars. Negligence. Contributory negligence*

It is not necessarily negligence on the part of a railroad company, as between the company and a brakeman on duty in its yard, that a freight car is found in use on its road in such a damaged and crippled condition, that it exposes the employee to more than the common risk and danger which is incurred in handling ordinary cars. It is unavoidable that damaged cars must at times and places be handled by railroad employees.

A proper management of a railroad may require that reasonable rules and regulations be adopted and published, in order that employees may be apprised of any unusual danger which they may be subjected to in handling damaged cars.

If there be danger in handling a crippled car, which an experienced brakeman can appreciate for himself, the defective condition of the car being known to him, and he voluntarily assumes the risk of managing it in a manner which exposes him to unusual danger, when the emergencies are not so extreme as to require the service of him, he cannot recover of the company, if injured while so engaged.

A yard brakeman cannot recover against a railroad company for an injury received in falling from a flat freight car, loaded with coal, while attempting to stop the car from running down a side-track, and possibly off at the end of it, by jumping upon the brake-beam in the front of and under the car, and pressing it down with his feet, holding himself to the car with one hand and pulling up the brake-chain with the other, the excuse for his act being that the brake-staff was so bent that it could not be effectively used in the ordinary manner; there being no rule of the company nor any order from any officer requiring such an undertaking by him.

ON motion by the defendant to set aside the verdict, which was for plaintiff in the sum of $2733.33. From superior court.

The opinion states the case.

*H. M. Heath*, for plaintiff.

As to the requested instruction that car inspectors and brakemen are fellow servants. The rule given follows *Shanny* v. *Androscoggin Mills*, 66 Maine, 426.

In the following cases it has been held that car inspectors and brakemen are not fellow servants. *Macy* v. *St. Paul & Dakota Ry. Co.* (Minn.) 28 N. W. Rep. 249 ; *Miss. Pac. Ry. Co.* v. *Dwyer*, (Kansas) 12 Pac. Rep. 352 ; *Busby* v. *N. Y. L. E. & West. R. Co.* 37 Hun. 104 ; *Fay* v. *Minn. & St. Louis Ry. Co.* 30 Minn. 231 ; *Texas Pac. Ry. Co.* v. *McAlee*, 61 Tex. 695 ; *King* v. *Ohio R. Co.* 14 Fed. Rep. 277 ; *Houston & Tex. Cent. Ry. Co.* v. *Marcelles*, 59 Tex. 334 ; *Condon* v. *Miss. Pac. Ry. Co.* 78 Mo. 567 ; *Brann* v. *Chicago R. 1. & P. Railroad Co.* 53 Iowa, 595 ; S. C. 36 Am. Rep. 243 ; *Tierney* v. *Minn. St. L. Railroad Co.* 33 Minn. 301 ; S. C. 53 Am. Rep. 35.

The principle involved is decided and fully supported by the following cases: *Northern Pac. Railroad Co.* v. *Herbert*, 116 U. S. 646 ; *Hough* v. *Ry. Co.* 100 U. S. 214 ; *Ford* v. *Railroad Co.* 110 Mass. 240 ; *Mulvey* v. *R. I. Locomotive Works*, 14 R. I. 204 ; *Flike* v. *B. & A. Railroad Co.* 53 N. Y. 549.

*Mackin* v. *Boston & Albany Railroad*, 135 Mass. 203, is not an authority against this position.

Exceptions do not lie to a refusal to give instructions upon facts not proved in the case as existing. *Soule* v. *Winslow*, 66 Maine, 447.

That the request may be sound as an abstract question of law is immaterial if there are no facts from which to infer the hypothesis of the requested instructions. *Roberts* v. *Plaisted*, 63 Maine, 335 ; *Pen. Railroad Co.* v. *White*, 41 Maine, 512 ; *Lord* v. *Kennebunkport*, 61 Maine, 462.

Under the request, no matter how flagrantly defective a foreign car might be, no liability could rest upon the defendant company. The request goes even farther than *Mackin* v. *B. & A. Railroad Co.* 135 Mass. 201, and holds that as to foreign cars the defendant company does not owe its employees the duty even of inspection ; the element of inspection is omitted from the request. The condition of the cars is the sole element. This portion of the request was clearly incorrect. Not being correct in its entirety, it was properly refused. *G. T. Ry. Co.* v. *Latham*, 63 Maine, 177.

Instructions bottom of page 9. The instructions follow *Shanny* v. *Androscoggin Mills*, almost verbatim. It should be noticed that the obligation to keep in repair is stated on page 94, and no exceptions taken to the rule as there given. To sustain this exception the court must overrule *Shanny* v. *Androscoggin Mills*.

If this testimony was misstated, defendant's counsel should have called the attention of the court to it at the time. *Bradstreet* v. *Rich*, 74 Maine, 303.

*Lesan* v. *Maine Central Railroad*, 77 Maine, 85, is but familiar law as applicable to this case.

*Mackin* v. *B. & A. Railroad*, 135 Mass. 203, does not support defendant's claim.

The next case cited by defendant's counsel, *Fitzpatrick* v. *Miami Railroad Co.* is the same in legal effect. *Nashville Railroad Co.* v. *Foster* (Tennessee) ; *Smith* v. *Railroad Co.*

(Mich.) and *Railroad Co.* v. *Bragonier* (Illinois), tend to support defendant's claim.

*Cassidy* v. *M. C. Railroad Co.* 76 Maine, 488, is not in point. It holds that the master is not responsible for an injury caused by the negligence of a fellow servant.

*Chicago B. & Q.* v. *Warner* (Ill.), cited by counsel, is not applicable. The doctrine there stated is that before coupling a car it is the duty of the employee to examine the coupling before using it. To the same effect is *Davis* v. *Detroit & M. R. Co.* (Mich.) ; *Hathaway* v. *Mich. Cent. Railroad Co.* ; *Mich. Cent. Railroad Co.* v. *Coleman.*

This doctrine is controverted in *King* v. *Ohio Railroad Co.* 14 Fed. Rep. 277 (GRESHAM, J.).

*King* v. *Boston & W. Railroad*, 9 Cush. 112 ; *Holden* v. *Fitchburg Railroad Co.* 129 Mass. 277, do not in the slightest degree support the claim made that in a case like the one at bar the obligation of the defendants to the plaintiff is satisfied by the employment of suitable persons to inspect and examine the sufficiency of the car and brake and its condition of repair.

*Horton* v. *Ipswich*, 12 Cush. 488, is not pertinent because it contains no element of obedience to duty, as in the case at bar.

Equally inapplicable is Deering on Neg. 212.

*Hickey* v. *Boston & L. Co.* 14 Allen, 432, was a case where a passenger took a position unnecessarily and suffered injury. This, too, lacks the element of performance of duty. It is not an authority for the case at bar. *Shannon* v. *Boston & A. Railroad Co.* 78 Maine, 53, is equally remote.

*Edmund F. Webb and Appleton Webb*, for the defendant.

Inspector of cars and a brakeman employed on them are fellow servants. *Mackin* v. *Boston & A. R. Co.* 135 Mass. 201 ; *Little Miami R. Co.* v. *Fitzpatrick*, 17 Am. & Eng. R. Cas. 578 ; *Smith* v. *Flint & P. M. R. Co.* 46 Mich. 258 (41 Am. R. 161) ; *Chicago & A. R. Co.* v. *Bragonier*, 11 Ill. App. 516 ; Deering, Neg. 205 ; *Cassidy* v. *Me. Cen. R. Co.* 76 Maine, 488 ; *Blake* v. *Me. Cen. R. Co.* 70 Maine, 60.

Contributory Negligence. *Chicago B. & Q. R. Co.* v.

*Warner,* 108 Ill. 538 (18 Am. & Eng. R. Cas. 101) ; *Davis* v. *Detroit & M. R. Co.* 20 Mich. 105 (4 Am. R. 364) ; *Hathaway* v. *Michigan C. R. Co.* 47 Am. R. 573 ; *Michigan C. R. Co.* v. *Coleman,* 28 Mich. 448.

Railroad companies are not responsible for defects in cars caused by ordinary wear and tear. *Chicago B. & Q. R. Co.* v. *Avery,* 109 Ill. 314 (17 Am. & Eng. R. Cas. 649) ; 3 Wood, R. R. § 373, note ; 2 Thomp. Neg. 971, 933 ; *King* v. *Boston & W. R. Co.* 9 Cush. 112 ; *Sammon* v. *N. Y. & H. Railroad Co.* 62 N. Y. 251 ; *Holden* v. *Fitchburg R. Co.* 129 Mass. 277 ; *Buzzell* v. *Laconia M'f'g Co.* 48 Maine, 113.

Negligence. Deering, Neg. 198, 201, 212 ; *Smoot* v. *Mobile & M. R. Co.* 67 Ala. 13 ; *Cagney* v. *Hannibal & St. J. R. Co.* 69 Mo. 416 ; *Smith* v. *St. Louis K. C. & N. R. Co.* 69 Mo. 32 ; *Noyes* v. *Shepherd,* 30 Maine, 173 ; 2 Thompson, Negligence, 1015, 1010, 1011 ; *Reed* v. *Northfield,* 13 Pick. 94 ; *Whittaker* v. *West Boylston,* 97 Mass. 273 ; *Frost* v. *Waltham,* 12 Allen, 85 ; *Horton* v. *Ipswich,* 12 Cush. 488 ; *Hickey* v. *Boston & L. R. Co.* 14 Allen, 432.

Voluntary exposure by plaintiff. *Shannon* v. *Boston & A. R. Co.* 78 Maine, 53 ; *South Covington & C. R. Co.* v. *Ware,* 27 Am. & Eng. R. Cas. 206 ; *Merrill* v. *North Yarmouth,* 78 Maine, 200.

PETERS, C. J. The plaintiff sues to recover damages for a personal injury which he alleges was caused by the defendants' negligence. The following facts, after verdict for the plaintiff, may be considered as established : On the evening of November 3, 1885, a freight train ran into the station at Waterville, containing a flat or platform car belonging to a foreign company, (Boston and Maine) loaded with coal which it had received at Gardiner to transport to Skowhegan. The next morning the flat car, with a box car attached to it, was left standing on a side track at the station. The plaintiff, who was an intelligent and experienced hand in the business of braking and switching cars in the Waterville yard, undertook with another brakeman, in pursuing their regular work, to disconnect the box car from the

flat car, and to run it upon another track. The associate stood at the front of the box car, ready to shackle it to the engine, while the plaintiff was at the other end of the same car in order to unshackle it from the flat car, and to give to the other persons engaged in the job the customary signals. The work having been accomplished, the plaintiff started for the engine and box car as they were moving off, and, while in the act of climbing upon the box car in motion, noticed that the flat car had begun to move slowly down the siding in the opposite direction, from the effect of too strong a movement of the engine when backing down to make the disconnection. He alighted upon the platform and proceeded at once to the flat car, getting upon it at the rear, as it was moving, and passing to the front, found that his efforts to stop the car by means of the brake to be unavailing, for the reason that the brake-staff or handle was so bent that it could not be used. He then got down upon the track in front of the car, moving towards him, and grasped a hold upon the front board of the bin which held the coal, the board being near the front of the car, planting his feet upon the brake-beam under the car, endeavoring with his other hand to seize the brake-chain connecting with the beam, and thus by pulling with his hand and pressing with his feet, to work the brake sufficiently to stop the car. While attempting this operation his foot slipped and was run over by the car and badly injured. Other evidence will be stated in connection with the points to be examined.

The plaintiff's contention that it was improper or imprudent to use such a pattern of brake on cars as the augur handle brake, as it is called, has no support to stand upon. The evidence conclusively shows that the objection is not tenable.

The plaintiff contends that it was negligence for the company to allow a car in such disabled condition to be in use on its road, and, in support of the position invokes the principle that the employer is under responsibility to the employee to furnish properly constructed tracks and rolling stock and keep the same in repair. The defendants rely upon the other principle that servants take the risk of the negligent acts of fellow servants in the same employment, and contend that they employed suitable

persons as inspectors, whose duties required them to decide whether cars are fit to be run on the road or not, and that brakemen and inspectors are such fellow servants, and that no further responsibility than that, as far as brakemen's rights are concerned in a matter of this kind, rests upon the proprietors of the road.

We do not think it to be at all necessary to declare which should be the governing principle as applicable to this case. The rights of the parties depend upon other and less general rules. If we assume for the sake of progress in the examination of the case, that the car inspectors, who passed the car as one that could properly be run, were not fellow servants with the brakemen in the yard, we do not even then see that the defendants were responsible for plaintiff's injury.

In the first place, we cannot perceive that it was an act of negligence on the part of any one that the car happened to be situated, in the condition it was in, on a side track at Waterville, taking into consideration any acts of service which the yard brakeman would be likely to be called upon to perform in connection with it. It appears that it is not essential that flat cars should have brakes upon them for any purposes excepting when they are being managed singly. The movements of a freight train are governed by the brakes on the box cars, and on the saloon car at the end of the train. Flat cars are not in all instances provided with brakes. When loaded with lumber and some other kinds of merchandise, it frequently happens, and necessarily so, that the brakes on such cars cannot be advantageously used or used at all. They are often covered up by the load. And it is a very common thing that brake staffs are bent or broken, and become temporarily useless by the cars battering against one another. There were received in the usual course of business, in the Waterville yard, at the time of and long before this accident, a hundred or more box and platform cars daily, of all kinds and patterns, domestic and foreign, loaded and light, and in all conditions of repair. It was a common thing to find that the braking apparatus on a car had become broken or bent and deficient for use.

No one was directed to move the car in question from its

position on the side track. When the time should come for making up a train, it might be connected by moving other cars to it instead of moving it to them. It was inherently safe enough to keep on its intended journey with a completed train. It became necessary to detach another car from it. Who could anticipate a probability that in uncoupling the car attached to it any one might be injured? It was practically like a perfectly constructed car without a brake attached.

But suppose the car were to be moved from its position. It must be either to continue on to its destination, or be moved to some suitable place for removing the coal from it, or sent directly into the repair shop. Who is to assist in moving or managing it, if it cannot remain where it is? Is it negligence in the company to ask the assistance of their brakemen in changing its position? The very employment of the plaintiff consisted partly in such services. He says his business was in performing " odds and ends " of work about cars. It happens that the defendants have repair shops at Waterville, but maintain them at only one or two other places on the road. There are many places where cars are shifted and transferred before a car which had become disabled on the road would ordinarily get into a station where repairs could be made upon it. They cannot be left at the wayside.

To meet the necessities of all such cases, a reasonable management of the road may require that certain rules and regulations be adopted and observed in order to apprise employees of deficiencies in the running gear of cars, whereby they might be warned from exposing themselves to unusual danger. Here no notice was posted on the car. But was any notice required? Did any injury occur to plaintiff for want of notice? He was not injured by using or attempting to use a deficient brake. He knew that the brake would not work.

Any servant may be reasonably subjected to the risks which properly belong to the employment he is in. One of these risks which the plaintiff assumed, was in handling, under reasonable conditions, crippled freight cars. Under this rule, it was held in *Belair* v. *Chicago, &c. Ry. Co.* 43 Iowa, 662, that where it

was the duty of a brakeman to take damaged cars to the shops to be repaired, and he was injured while coupling such cars, he could not recover of the company on the ground of negligence in using damaged cars. The same rule applies as to injuries from overhanging bridges of which the brakeman has been warned or notified, or which he should notice for himself. In such cases the servant waives the danger or defect. Even where a master fails in his duty in respect to inspecting and repairing the machinery or appliances to be used by the employee, and the servant voluntarily assumes the risks of the consequences of the master's negligence, with knowledge or competent means of knowledge of the danger, he cannot recover damages of the master. Thomps. Neg. § 973, and cases. Here the plaintiff was acting with his eyes wide open to the perils of his undertaking. The danger was seen and the risk voluntarily assumed. The act was not required of him by any rule or request of the company.

The learned counsel for the plaintiff hopes to avoid the conclusion which this course of reasoning leads to, by the plea that the plaintiff was justified in the act attempted by him, as necessarily done in consequence of the prior acts of negligence on the part of the company. We think this position to be unsupported by the evidence. It was not cause and effect. The witnesses, though the admission comes with different force from different persons, unanimously agree that the plaintiff's mode of attempting to stop the car was extremely dangerous. An examination of the car, or of any such car, should satisfy any one that the act was hazardous, if not foolhardy in the extreme. No rule of a company, which required such a service of an employee, would be tolerated for a moment. Perhaps, in one sense, it cannot be charged against the plaintiff that he was negligent, for he voluntarily and intentionally incurred and braved the danger, on no one's responsibility but his own.

He had before needlessly done the same thing, and others had. That is no excuse. He knew better. He had been warned against it. There is a good deal of reason to induce the belief that he was acting on this occasion merely for his own convenience,

and that he could have used the brake, but the jury found the fact differently, by which finding the parties may reasonably be bound.

But the consequences, says his counsel, which would have ensued had not the car been stopped, were of such a magnitude as to require that his act should be regarded as having the assent of his principal; that the emergency conferred an implied agency on the employee to do what he did to save the company's property. It does not seem so to us. No life was in danger, no great injury to property would have ensued, and no collision was threatened from the running car. He could have used a trig of some kind. He says that it was not allowed. Others say that it was allowable to do so, even as a general practice. Certainly, in any such emergency or dilemma as this occasion was, it would be allowable. The fact that the car stopped almost at the moment it struck upon the plaintiff's foot, is evidence indicating that it had not attained much speed, and that it could have been easily checked by most anything placed in the way of it. If left alone, it might or might not have gone off at the end of the siding. The plaintiff had known of cars going off in such way without causing very material loss or damage. We do not see that any emergency existed, either apparent or real, which justified the plaintiff in thus exposing himself. He had no right to do so at the risk of the company.

The plaintiff says the company would have complained of him for allowing the car to run off the track. But the fear on his part evidently was that the company would find fault because he allowed the car to get away from him at the moment when the uncoupling was made. With an impression on him of his inattention to duty at that moment, he was evidently stimulated to great risk and exertion to prevent any injurious consequences from his remissness in that act.

We are satisfied, upon all the evidence, if not upon that of the plaintiff alone, that the verdict ought not to stand.

*New trial granted.*

WALTON, DANFORTH, LIBBEY, EMERY and HASKELL, JJ., concurred.