# Warden *v.* Louisville & Nashville Railroad Co.

*Action for Damages for Personal Injuries, by Brakeman against Railroad Company.*

1. *Sitting on cross-beam in front of engine as negligence.*—The front brakeman on a freight train running between several small country stations, whose duties require him to be on top of the cars while the train is moving (attending to the brakes of the front cars), or on the ground in front of the engine at or near a station or siding (opening and turning switches), and who receives personal injuries while riding on the cross-beam in front of the engine between two stations, with his legs hanging down, is guilty of such contributory negligence as bars an action for damages; and the court may so instruct the jury, as matter of law.

2. *Same; evidence as to custom, or usage.*—In such case, the plaintiff can not be allowed to prove that it was usual and customary for him and other brakemen, while on duty, thus to ride on the cross-beam

[Warden v. Louisville & Nashville Railroad Co.]

in front of the engine, since this would not excuse or palliate the negligence.

3. *Same; testimony as to comparative danger of positions.*—Nor can he be allowed to prove by railroad men that, in their op·nion, it is not more dangerous thus to ride in front of the engine than on the top of the cars.

APPEAL from the City Court of Birmingham.
Tried before the Hon. H. A. SHARPE.

TALIAFERRO & HOUGHTON, for appellant, cited and relied on *Railroad Co. v. Jones*, 95 U. S. 439; *Hough v. Railway Co.*, 100 U. S. 213; *Kresanowski v. Railway Co.*, 18 Fed. Rep. 230; 33 Amer. & E. Railroad Cases, 358; 38 *Ib.* 175; 17 Atl. Rep. 614; 21 Pac. Rep. 574; 8 Amer. & E. R. R. Cases, 523; 3 Amer. St. 230; *Sprong v. Railroad Co.*, 58 N. Y. 56.

HEWITT, WALKER & PORTER, *contra*, cited *Railway Co. v. McCally*, 21 Pac. Rep. 574; *Railroad Co. v. Robbins*, 23 Pac. Rep. 113; *Judkins v. Central Railroad Co.*, 14 Atl. Rep. 737; *Railroad Co. v. Wallace*, 13 S. W. 567; *Langdon v. Penn. R. R. Co.*, 1 Amer. & E. R. R. Cases, 87; *Hickey v. B. & L. Railroad Co.*, 96 Mass. 433; *Railroad Co. v. Walters*, 91 Ala. 435; 53 Cal. 32; 5 Cush. 590; 102 Mass. 531; 80 Ill. 251.

McCLELLAN, J.—Appellant was plaintiff below. He received personal injuries while in the service of the appellee as head or front brakeman on a freight train, and brought this action to recover damages therefor. The trial was had upon the general issue and several special pleas, each averring plaintiff's contributory negligence. No evidence was adduced except on the part of the plaintiff; and upon this the court gave the general affirmative charge in favor of the defendant, on the theory that his own evidence was free from conflict, and all contrary inferences, to the proof of negligence on his part which proximately contributed to the injury sustained by him. This evidence showed that the train on which plaintiff was employed was a regular cross-country freight train of the defendant company. Its run was over the line between Bessemer and Boyle's Station, a distance of seventeen miles, between which points were four other stations from one to seven miles apart. The business of this train was to receive and deliver, at these intermediate and terminal stations, cars laden with ore, pig-iron and the like, and also general freight; and in doing the work assigned to it, it was necessary to do more or less switching, and setting in upon,

and taking out from side tracks, loaded cars at each one of these stations. It was plaintiff's duty, when the train was proceeding along the line, to attend to the brakes on the two or three cars next to the engine, a duty which could be performed only on the tops of the cars; and on approaching a station at which cars were to be left, or taken on, his duty was to open switches leading into and out of sidings, a duty which could only be performed on the ground in front of the engine. It does not appear that he had any duties to perform, or that any of his duties could be performed, on the pilot, cross-beam, or cow-catcher of the engine, or that it was in any sense necessary for him to be on the cross-beam in front of the engine at any time, and certainly at no time while the train was passing from one to another of the stations served by it. Yet, it is uncontroverted in this case, that he received the injuries of which he now complains while sitting on this cross-beam in front of the engine—the beam to which the pilot or cow-catcher is attached—with his legs hanging over in front of the pilot; and this while the train was out on the main line proceeding from one station to another, and when the only duty he could possibly have had to perform was upon the top of the train. Not only so, but it is equally clear from the testimony that the casualty was directly the result of the pilot's colliding with a rail of a bisecting road; that no other part of the train or engine was injured; that no other of the several persons on the train was hurt, and that he would not have been hurt but for his having taken this position on the pilot.

There being thus no doubt that plaintiff's presence on the pilot contributed proximately to the injuries he sustained, the main question in the case is whether his being there at the time of the accident was negligence in se on his part, and to be so declared by the court as a matter of law. The authorities are believed to be uniform to the support of the affirmative of this inquiry; the investigations of the court and counsel have failed to disclose a single adjudged case to the contrary, while many courts are upon record as holding, either by analogy or directly, that to ride upon the pilot or cross-beam in front of an engine, while proceeding on its way along the line of its track, without justifying necessity therefor, involves per se such negligence as will defeat an action counting upon injuries received while so riding, and which would not have been received but for the plaintiff's being there. Even the assumption of less dangerous, but, at the same time, improper positions on moving trains, voluntarily and unnecessarily, has been many times held to be contributory negli-

[Warden v. Louisville & Nashville Railroad Co.]

gence as a matter of law, neutralizing the negligence of the defendant, and destroying an otherwise good cause of action, as is illustrated in the following cases: *Martin v. B. & O. R. R. Co.*, 41 Fed. Rep. 125; *Judkins v. Maine Central R. R. Co.*, 14 Atl. Rep. 735; *Higley v. B. & L. R. R. Co.*, 96 Mass. 429; *Penn. R. R. Co. v. Langdon*, 1 Am. & Eng. R. R. Cases, 87; *Kentucky R. R. Co. v. Thomas*, 1 Am. & Eng. R. R. Cases, 79; *Lehigh Valley R. R. Co. v. Greiner*, 28 Am. & Eng. R. R. Cases, 397; *A. & C. S. L. R. R. Co. v. Ray*, 70 Ga. 674; s. c., 22 Am. & Eng. R. R. Cases, 281; *Mortensen v. C. R. I. & P. R. R. Co.*, 11 Am. & Eng. R. R. Cases, 233. And it is laid down as a general proposition, that the act of riding, without a necessity so to do, on an engine is contributory negligence *per se*, which will defeat recovery for injuries resulting in consequence from collisions and the like. *Abend v. T. H. & G. Ry. Co.*, 15 Am. & Eng. R. R Cases, 614; *Doggett v. Illinois R. R. Co.*, 34 Iowa, 284; *Robertson v. New York R. R. Co.*, 22 Barb. 91. As an engine is justly considered the most dangerous place to be on a train moving forward, so, for the same reasons, the pilot is manifestly and obviously the most perilous place on a forward moving engine. Its very name is a proclamation of danger. The sole end it is intended to conserve—the removal of obstructions from the track—is alone sufficient to impress upon it, to the apprehension of every man in his right mind, the character of being the most perilous place capable of occupation on a train while proceeding from station to station on its way. And so, we repeat, the authorities present unanimity to the proposition, that to take position there, under such circumstances, is a fact not only authorizing the inference of negligence to be drawn by the jury, but to which the law itself imputes negligence.

A leading case on the point is that of *Railroad Co. v. Jones*, 95 U. S. 439. There, the plaintiff was one of a party of men employed by a railroad company in constructing and repairing its road-way. They were usually conveyed to and from their place of labor by the company, and a box-car drawn by an engine was used for this purpose. The plaintiff, although forbidden on several occasions to do so, and warned of the danger, on returning from work one evening, rode on the pilot or bumper of the locomotive, and was injured from a collision with some cars standing on the track in a tunnel. There was room for him in the box-car, as there was room for the plaintiff here on the train; and none of those in the box-car were hurt, as here all who remained on the cars escaped injury. It was held that, as the plaintiff would not have been injured had he used ordinary care, he was not entitled to re-

[Warden v. Louisville & Nashville Railroad Co.]

cover, Mr. Justice SWAYNE observing: "His injury was due to his own recklessness and folly. He was himself the author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit."

In the case of *Kresanowski v. No. Pac. Railway Co.*, 18 Fed. Rep. 229, the facts were, that the plaintiff, an employé of the defendant railroad company, while being transported to the place where his services were required along with other employés on an engine provided by the company, sat, with one or two others, on the front of the engine, with his feet hanging over the pilot, and was injured by a collision with another engine. It was held, on a motion to instruct the jury to find a verdict for the defendant, (1) that the plaintiff himself so far contributed to his injury by his own negligence in placing himself in such a dangerous position that he could not recover, and (2), there being evidence that there was no room for the plaintiff on the tender, and that he had in effect been authorized or invited by the company to ride over the pilot, that the plaintiff being of age, and able to see and know the risks of the position, even the fact of such invitation and authorization would not justify him in placing himself in a position of obviously great risk and danger.

But the strongest support of this doctrine is found in the circumstances of a Michigan case, and the several decisions which were made in different actions which grew out of it. The facts were, that a switchman in the employ of a railway company was killed. The engine upon which he was employed, and which was at the time engaged in switching cars about the yard of the company, ran into a truck owned by the defendant, an individual having no connection with the railway company, and driven by his teamster. The result of the collision was the death of the switchman, injury to defendant's teamster, and destruction of the truck and team. The switchman at the time of the collision was sitting on the cross-beam of the pilot, with his feet hanging down over the "cow-catcher." He had no duties to perform while on the engine. His duty was to attend to the switching of tracks in front of the engine, getting off and on the cars for that purpose. It is to be noted that, while this case is strikingly like the one at bar in most of its features, it is yet different from it in that the party injured there was a switchman having no duties to perform on the cars, and the engine was being run in the railroad yard, and only for the purposes of switching, while here plaintiff's duties while the train was in motion were all on top of the cars, and at the time of the accident the train was running across country, and not engaged in switching at all; and was

in fact engaged in switching at no time, except as an incident of its carrying business from station to station; so that, in every particular in which there is a difference between the two cases, the Michigan case is a much stronger one in favor of the injured party than the present one. Several actions grew out of the transaction. The teamster sued the railroad company, counting on the personal injuries he sustained; the company was found negligent, and judgment went against it, which was paid. The railroad company also paid the owner for the loss of his truck and team. The personal representative of the dead switchman sued the railroad company, in the Circuit Court of the United States, claiming that the death of his intestate resulted from the negligence of the railroad company in not ringing the bell, or blowing the whistle, for the crossing over which the truck was passing when the collision occurred, in not having a flag-man there to keep the way clear, in obstructing the switchman's view of the crossing, &c. Judge Brown, now of the Supreme Court of the United States, before whom that case was tried, directed a verdict for the defendant, upon the ground that the switchman was guilty of contributory negligence in being at the time on the cross-beam of the pilot. The administrator of the switchman then sued the owner of the team and truck, and this last case went to the Supreme Court of Michigan, and was there determined against the plaintiff, who had recovered in the *nisi prius* court, on the ground that the trial judge had left it to the jury to say whether the switchman was guilty of contributory negligence, when the court itself should have determined that he was guilty of negligence which contributed to his death as a matter of law, and thus withdrawn that issue from the jury altogether. Grant, J., rendering the opinion of the court, said: "Several questions are raised by the record, but the plaintiff's right to recover is barred by his decedent's contributory negligence, rendering a determination of the other questions unnecessary. There is no dispute about the facts. The judge found as a fact, and so charged the jury, that there was no testimony in the case that the deceased was obliged to ride upon the cow-catcher, and left it to the jury to determine whether or not this constituted negligence on his part. In the absence of proof, we can not believe that any railroad company requires its switchmen, or any of its employés, to ride in so dangerous a place. There was a safer place for him to ride. He was neither required nor directed to ride in a position which every person of ordinary intelligence and observation knows was the most dangerous he could well have chosen. The fact that upon switch-engines switchmen rode

[Warden v. Louisville & Nashville Railroad Co.]

standing upon the platform provided for them in front of the engine, had no tendency to prove that the deceased was justified in riding in a sitting posture upon the cow-catcher of a road-engine; nor would the fact that switchmen were in the habit of riding upon the cow-catcher excuse the deceased, as between him and defendant. Yet the judge substantially left the jury to determine the question of contributory negligence, by the determination of the question as to whether the deceased was riding in the usual and ordinary place upon the engine. If switchmen always rode there, still that fact would not take them without the rule of contributory negligence. When a safer place is provided, and employés choose a more dangerous one, they do it at their own risk. The difference in danger between standing on a platform of a regular switch-engine and sitting on a cow-catcher, with one's legs hanging over it, is apparent. In the one case, the switchman is ready to jump upon the approach of danger; in the other, considerable time must elapse before he could recover his standing position upon the pilot-beam, and put himself in readiness to avoid danger. In the present case, deceased was the only one upon the engine who was injured. He chose the only place in which he could have been injured, and chose a sitting posture instead of a standing posture.—*Railroad Co. v. Jones*, 95 U. S. 439; *Doggett v. Railroad Co.*, 34 Iowa, 284; *Kresanowski v. Railroad Co.*, 18 Fed. Rep. 229. We quote with approval from the language of the court in *Railroad Co. v. Jones*, as applicable in this case: "This [contributory negligence] is shown with as near approach to demonstration as anything short of mathematics will permit. There was no fact in this case for the determination of the jury. The question was, therefore, one purely of law. It was therefore the clear duty of the court to instruct the jury to find for the defendant. It was as clearly its duty as it would be to determine the legal effect of a contract, the terms of which are undisputed."—*Glover v. Scotten*, 46 N. W. Rep. 936.

The exigencies of the case at bar do not require that we should go to the full length of the opinion in *Glover v. Scotten*, and hold that for a switchman to sit upon the pilot or cross-beam of a road-engine being moved about in the yards of a railroad while performing the functions of a regular switch-engine, would be negligence *per se*. It may be that the true doctrine in such case is that declared by the Supreme Court of Kansas in *Missouri Pacific Ry. Co. v. McCally*, 21 Pac. Rep. 574, where it is held, the company having failed to provide a switch-engine, and having always required switching to be done with an ordinary freight-engine, there being

some evidence of a necessity for switchmen to stand on the cross-beam while the engine was being moved about the yard, and to the effect that it was the usual custom of all brakemen in that yard to so ride, that the question as to whether that· position was one of danger and voluntarily chosen by the deceased, was a question of fact to be determined by the jury under all the circumstances. The position of the Kansas court may be conceded for all the purposes of the case we are considering, without affecting the result we have foreshadowed. Here, the engine was not a switch-engine, nor being used at the time of the accident as a switch-engine. It was an or-·dinary road-engine proceeding on its way along the line of the road between two stations, engaged in its regular business of ·drawing a freight train. The case is thus wholly unlike *McCally's*, and upon all-fours with *Jones'* and *Kresanowski's* cases. The person injured was not standing on the steps of the pilot, and thus in a position to escape a collision with facility by jumping, as in the Kansas case, but sitting down on the beam with his legs hanging over the cow-catcher, as in the ·cases of *Jones, Kresanowski*, and *Glover;* though we are not prepared to say that the particular attitude assumed on the pilot by the person injured could ordinarily be a material con-·sideration. *McCally's* case is strenuously pressed upon our attention, in connection with the facts that the line over which the train on which plaintiff was injured was running, ·was a short one, that the stations on it were not far apart; ·that this train had to stop at each one of them, and at each do more or less switching. We do not conceive that these facts ·can exert any influence on the question. Certain trains on ·all roads stop at all stations. Usually such trains have switch-·ing to do at all stations. The right of the front brakeman on ·such trains to leave his post of duty, which is on the top of the cars, and take a position of obvious danger on the· pilot, ·can not be made to depend upon the frequent recurrence of stations, and a consequent necessity for him to open switches in front of the engine. However frequent the stations are, and whatever the duties of the head brakeman may be at the stations, it is certain that, while the train is passing from one station to another, there are no duties for him to perform on, or even near the pilot, and·no possible necessity for his presence there. We feel entirely safe in the conclusion, that plaintiff's conduct in unnecessarily and voluntarily leaving his post of duty, and assuming a position of obviously greater danger, but for which he would not have been injured, involved such negligence on his·part as justified the trial court in giving the general affirmative charge against his right to recover.

[Warden v. Louisville & Nashville Railroad Co.]

It is insisted, however, that the case should be reversed, be-cause of the exclusion of certain testimony offered by the plaintiff, going to show a custom on the part of himself and other head brakemen on that train to ride between stations on the pilot. The City Court did not, in our opinion, err in the exclusion of this testimony. The fact that one is in the habit of doing an obviously dangerous thing, does not make his act any the less a dangerous one. The fact that many or all of a limited class of persons customarily ride upon the pilot of an engine does not alter the characteristic of obvious peril which the law imputes to that position. It is negligence per se for persons to walk upon the track of railroads; doubt-less many persons are in the habit of using the track in this way. Yet it has never been supposed, and it can not be the law, that such custom would convert the track, which the law declares to be per se a dangerous place, into a safe place. So, a person may be in the habit of crossing railway tracks with-out stopping and looking and listening for approaching trains, yet we have never heard it suggested such person, when he finally reaps the penalty of his lack of care, is, because of such habit, not guilty of contributory negligence as a matter of law. Custom and usage may be relied upon to excuse the violation of a rule when the act involved is not negligent in itself, but only by relation to the rule violated; and so, when an act may be done in two or more ways, a resort to neither of which involves such obvious peril as raises the legal pre-sumption or conclusion of negligence in the doing of it, a cus-tom or usage to do it in a particular way may be looked to, as tending to show that it was not negligence to resort to that method in the instance under consideration. But custom can in no case impart the qualities of due care and prudence to an act which involves obvious peril, which is voluntarily and un-necessarily done, and which the law itself declares to be neg-ligent.— *Glover v. Scotten*, 46 N. W. R. 936 ; *Hickey v. B. & L. R. R. Co.*, 96 Mass. 429 ; *Judkins v. Maine Central R. R. Co.*, 14 Atl. Rep. 735 ; *Chicago R. R. Co. v. Clark*, 15 Am. & Eng. R. R. Cases, 261 ; *So. Kan. Ry. Co. v. Robbins*, 23 Pac. Rep. 113 ; *Humphreys v. N. N. & M. V. Co.*, 10 S. E. Rep. 39 ; *Hibler v. McCartney*, 31 Ala. 501 ; *Bryant v. Central Vermont R. R. Co.*, 56 Vt. 710.

Nor do we conceive that the court committed error in re-fusing to receive opinion evidence, to the effect that it was not more dangerous to ride on the front of the engine than on the top of the cars. The general rule is well establisned, that such evidence is not competent, where all the facts upon which the opinion is founded can be ascertained and made in-

[Kansas City, Memphis & Birmingham Railroad Co. v. Higdon.]

telligible to the court or jury. All the facts upon which the opinion which was offered here proceeded were before the court, either through the ordinary vehicles of evidence, or as matter of judicial knowledge; and they presented such a state of case as that it became the court's right and duty to declare in effect, as a matter of law, that the cross-beam in front of the engine was an obviously more dangerous position on a moving train than the top of the train; and the authorities are uniform in support of the proposition, that the mere opinoins of witnesses to the contrary can exert no influence upon the conclusion which the court itself is esteemed more competent to reach and declare.—*Chicago v. McGiven*, 78 Ill. 347; *Bridge Co. v. Pearl*, 80 Ill. 251; Morgan's Appeal, 59 Mich. 5; *Muldowney v. Railway Co.*, 36 Iowa, 462; *Hamilton v. Railroad Co., Ib.* 31; *Kan. Pac. Ry. Co. v. Peavy*, 11 Am. & Eng. R. R. Cases, 260.

We discover no error in the record, and the judgment of the City Court is affirmed.