[Schlaff v. Louisville & Nashville R. R. Co.]

# Schlaff *v.* Louisville & Nashville R. R. Co.

| 100 | 377 |
| 105 | 376 |

*Action by Administrator for Damages for Wrongfully Causing the Death of Plaintiff's Intestate.*

1. *Contributo·y negligence.*—Where in an action for the death of a brakeman employed by defendant, railroad company, caused by contact with a low bridge, it appeared that the center of the bridge was high enough to allow one of the size of deceased to stand in the center of the car or at the brakes while passing under it, but that it sloped on the sides so as to be but two or three feet above the outer edges of the car; and deceased had passed under the bridge almost daily for four months, was 19 years of age, and the accident happened at midday, and the brakeman's proper place was at the brakes or on the footboard, in the center of the car, but at the time of the accident deceased was sitting for his own convenience on the edge of the car; he was guilty of contributory negligence.

2. *Absence of "whip straps" as negligence.*—Under the above state of facts it was proper to instruct the jury that the absence of "whip straps," or other warning signal, near the bridge, was not a ground of recovery.

3. *Proof of fact by general reputation.*—Evidence was inadmissible, in such case, to show by general reputation that the bridge was too low; general reputation is not competent evidence to prove the existence of a fact, but after a fact has been established by competent proof, general reputation is admissible to show that the party sought to be charged on account of the fact had knowledge of its existence.

4. *Proof of prior injury to another from same cause.*—In an action for injuries received by a brakeman from contact with a bridge while on top of a car, a witness cannot testify that two years prior to that time he saw a brakeman knocked off by such I ridge while climbing up the side of a car.

5. *Evidence; testimony of experts.*—Witnesses who have been "railroading" for fifteen years, and are familiar with the duties of brakemen, are competent to testify as to the duties of brakemen, their proper position, and the danger of riding on the edge of the cars with their feet hanging over the sides.

6. *Duty of master to warn employe of danger.*—Railroads are held strictly to a proper discharge of their duties, but the law does not require that they shall anticipate and provide against negligence of their employes. hence, as in this case, it was not incumbent upon the defendant to warn the deceased, who was a brakeman, of the dangers of a bridge which was reasonably safe if he exercised ordinary observation and care when passing under it.

7. *New trial; verdict on immaterial plea.*—Where there are good counts, and issue is joined on an insufficient plea, and it is clear that the verdict was rendered for the defendant on such plea, it is not ground for a new trial, the proper practice being, in such case. to apply for a repleader in the trial court.

8. *Same; newly discovered evidence.*—A new trial should not be

[Schlaff v. Louisville & Nashville R. R. Co.]

granted upon the ground of newly discovered evidence when such evidence, had it been before the jury, ought not to have changed the verdict.

APPEAL from the City Court of Birmingham.

Tried before the Hon. WILLIAM W. WILKERSON.

This was an action brought by Nicholas Schlaff, as administrator of Peter Schlaff, against the Louisville & Nashville Railroad Company to recover damages for the killing of plaintiff's intestate.

The complaint contained four counts. The negligence complained of in each of these counts is sufficiently stated in the opinion of the court. The defendant pleaded the general issue and contributory negligence on the part of plaintiff's intestate. On the trial the plaintiff's evidence tended to show that the deceased was nineteen years of age when killed; that he had been a brakeman on the defendant's trains four months, making daily trips between Birmingham and Decatur; that while he was in the discharge of his duties as such brakeman, on top of one of the cars of a freight train of the defendant he was knocked off and killed by the timbers of bridge No. 10. The accident occurred on July 22, 1891. The tendency of the evidence, both for the plaintiff and the defendant, is stated in the opinion of the court.

Upon the introduction of one George Shaneyfelt as a witness for the plaintiff, he testified that he had lived about 200 yards from said bridge No. 10, for three years prior to the trial and that no change had been made in the bridge during that time. He also testified that about two years prior to the accident he saw a negro brakeman, who was climbing up the ladder on the side of the car, knocked off by said bridge, and that it was the general reputation in the neighborhood and community of this bridge previous to July, 1891, that the bridge was too low, and that twelve or fourteen brakemen had been knocked off the top of freight trains by the bridge. On motion of the defendant, the testimony of this witness as to his having seen a negro brakeman knocked off from the side of the car, and as to the general reputation of the bridge in the community, was excluded from the jury, and to these rulings the plaintiff separately and severally excepted. The witness, NeSmith, testified as to a like reputation of said bridge in the neighborhood, and, upon motion of the defendant, his testimony was also excluded from the jury, and to this ruling plaintiff also duly excepted. E. F. Stollenwerck and one Stark were in-

troduced as witnesses for the defendant, and after testifying that they had been railroading for 15 years, and were familiar with the duties of brakemen, further testified that the proper position of the brakeman on the top of the moving train was on the running board, and not on the side of the car, with his legs hanging over; that to sit on the side of the car was more dangerous, and the danger of being struck by bridges is greater. Plaintiff moved to exclude this testimony of the witnesses, on the ground—First, that it was the opinion of the witnesses; second, it was the conclusion of the witnesses, and, third, that it invaded the province of the jury. The court overruled the motion, and the plaintiff excepted.

Among the other charges asked by the plaintiff and refused by the court were the following: "A duty devolved upon the employer to instruct his employes, and more especially if they are minors, and without experience in the duties and dangers of the business, before directing them to perform any duties attended with danger." (22) "If you believe from the evidence that the railroad company, through its agents, whose duty it was to know, knew that the probable consequence of maintaining the bridge in the condition it was would be to injure brakemen while in the discharge of their duties, and that Peter Schlaff was so injured, this would constitute wanton or reckless negligence, and plaintiff could recover, even if Peter Schlaff was guilty of contributory negligence." The plaintiff separately excepted to the court's refusal to give each of these charges, and also separately excepted to the court's giving, at the request of the defendant, the following written charges: (1) "If the jury believe that the plaintiff's intestate, by stooping when he approached bridge No. 10, could have avoided his injury, they must find for defendant." (2) "If the jury believe from the evidence that the plaintiff's intestate was familiar with the alleged bridge and its location, and, from inattention, indifference, absent-mindedness, or forgetfulness, he failed to take the necessary steps to avoid the injury, then the verdict must be for the defendant." (3) "The court charges the jury that if they believe from the evidence that the plaintiff's intestate was guilty of negligence, which proximately contributed to his alleged injury, their verdict must be for the defendant, although they may believe the defendant was guilty of negligence in the construction and maintaining of said bridge mentioned in the complaint." (4) "If the jury believe that the danger arising from the height of the bridge and the braces thereon was obvious, they must

find for the defendant, if they believe the height of the bridge was the proximate cause of plaintiff's intestate's death." (5) "If the jury believe from the evidence that the plaintiff's intestate, at the time of his death, if he had not been killed on defendant's road, would have left nothing, then the jury must award the plaintiff only nominal damages, even if they should find for plaintiff." (6) "If the jury believe that the danger arising from the closeness of the side of the car to the side of the bridge was obvious, they must find for the defendant, if the jury believe that the closeness of the side of the car to the side of the bridge was the cause of plaintiff's intestate's death." (7) "If the jury believe the evidence, they must find for defendant under the third count of the complaint." (8) "There is no evidence in this case that the defendant did not instruct plaintiff's intestate in regard to his duties when he was employed." (9) "That if the jury believe from the evidence that the plaintiff's intestate had been running on defendant's freight train between Birmingham and Decatur continuously for several months next prior to his alleged injury as brakeman, and that during said time he had passed through said bridge mentioned in said complaint almost daily, or three or four times every week, and if you further believe from the evidence that the plaintiff's intestate, by ordinary care and ordinary attention, could have avoided his alleged injury, then I charge you your verdict must be for the defendant." (10) "That if the jury believe from the evidence that the plaintiff's intestate had been running as brakeman on defendant's freight trains between Decatur and Birmingham for several months, and that during said time he had passed over or through the bridge mentioned in the complaint from three to four times a week, and frequently in broad daylight, and that at the time of his alleged injury he was sitting on one of the defendant's freight cars, connected with defendant's train, and on the side thereof, with his feet hanging over and upon the side of the said car, and was not actually engaged in any work connected with the duties as brakeman, and if you further believe that it would have been safer for him to sit upon the running board than the way he was sitting as aforesaid, if you believe he was so sitting, and if you further believe from the testimony that, had he been sitting upon the running board, he would not have been injured, I charge you your verdict must be for the defendant." The plaintiff, by his attorneys, after the verdict and judgment in the cause, moved the court to grant a new trial. The first ground of this motion

[Schlaff v. Louisville & Nashville R. R. Co.]

was newly discovered material evidence. The other grounds were based on the several exceptions reserved by the plaintiff to the rulings of the court upon the evidence, and the refusal of the court to give each of the several charges. The newly discovered evidence, which constitutes the basis of the first ground of the motion for a new trial, was shown by affida-vits, and was to the effect that one Joseph Brown would testify that while on one of defendant's freight trains as brakeman, previous to July 22, 1891, he saw a brakeman, Will Kennedy, knocked off the top of the car, while in the discharge of his duties, by bridge No. 10 of the defendant's road being too near the top of said car. It was also shown by the affidavits of the plaintiff's counsel that this evidence could not have been discovered by plaintiff previous to said trial, and that it was not in fact discovered until after the plaintiff had closed his testimony, and it was too late to use the said Brown as a witness on said trial. The court over-ruled each ground of this motion, and refused to grant a new trial, to which ruling plaintiff duly excepted.

WADE & VAUGHAN, for the appellants.—The first error assigned is the exclusion of the testimony of plaintiff's witness George Shaneyfelt, that about two years previous to intestate's death, witness saw a negro brakeman climbing up side of freight car of defendant, knocked off by bridge No. 10. Also the exclusion of the testimony of said witness, that it was the general reputation in the neighborhood and vicinity of bridge No. 10, that the bridge was too low, and that 12 or 14 brakeman had been knocked off the top of cars by said bridge. The complaint charged, that bridge No. 10 was both too low and too narrow; the fact of the brakeman's being knocked from the side of the car, was certainly evidence upon the fact, as to whether or not the bridge was too narrow. No one saw intestate at the moment he was killed. It was for the jury to decide whether he continued sitting as last seen, and was knocked off by the bridge being too low, whether the diagonal bruise across his forehead showed he had risen and been struck by the overhead diagonal brace.—*Woods v. Montevallo C. & T. Co.*, 84 Ala. 564; *Humes v. O'Bryan*, 74 Ala. 74 and 81; *Price v. Mazange*, 31 Ala. 7J1. The fact, that the bridge was too narrow, was established by seeing a brakeman, who was presumably in the discharge of his duty, until the contrary was shown, knocked off by this bridge. The fact that the bridge was too low was shown by the measurements in evidence of the bridge and cars, hence the general notoriety

of the fact of the bridge being too low was admissible, nec-
essary and relevant.—*Phoenix Ins. Co. v. Moog*, 78 Ala. 308.
This evidence was certainly admissible; it was directly upon
the point of the bridge being too narrow; and the measure-
ments were directly upon the point that the bridge was too
low.—*McCoy v. Watson*, 51 Ala. 567. The next assignment
of error, was based upon the court's allowing defendant's
witnesses Stollenwerck and Starks to testify that it is more
dangerous to sit on side of car, with feet hanging over, than
to sit on the running board, and gave the reasons therefor;
these reasons and the fact itself, was the giving of opinion
evidence, and a conclusion.—*Nave v. Ala. Great So. R. R.
Co.*, 96 Ala. 264; *Warden v. L. & N. Railroad Company*,
97 Ala. 277. After the defendant closed its testimony,
plaintiff offered to prove by witness Joseph Brown, that he
had seen previous to death of intestate, one Will Kennedy,
while in the discharge of his duties, on top of freight car of
defendant, knocked off by bridge No. 10; and offered said
witness and asked him questions in accordance therewith,
to elicit said evidence; also asked witnesses Shaneyfelt and
Nesmith what was the general reputation in the neighbor-
hood and vicinity of this bridge, about employes being in-
jured when on the top of cars, previous to July 22nd, 1891.
Defendant objected to the introduction of said testimony,
and objected to the questions propounded because said
questions were not in rebuttal and called for illegal, irrele-
vant and immaterial testimony. The object, purpose and
effect of the testimony offered in rebuttal was to introduce
testimony tending to prove knowledge on the part of defend-
ant of the bridge being unsafe, prior to intestate's death, and
knowledge of prior accidents to prove knowledge that prob-
able consequences of maintaining bridge as constructed
would be to injure brakeman in the discharge of their duties.
The plaintiff is not required to aver wanton negligence in
order to recover therefor. Plaintiff is only required to prove
simple negligence, to establish a *prima facie* case, then if
contributory negligence is pleaded, and any evidence intro-
duced tending to prove contributory negligence, the burden
shifts to plaintiff to prove wanton or intentional miscon-
duct, sometimes called negligence, to overcome the evidence
of contributory negligence.—*Savn. & West. R. R. v. Meadows*,
10 So. Rep. 142; *Ala. Great So. R. R. Co. v. Arnold*, 84 Ala.
169, and numerous cases therein cited. The evidence offered,
certainly tended to prove knowledge on the part of defend-
ant of the dangerous condition of the bridge, which would
be wanton negligence on the part of defendant. And "such

consciousness may be inferred from the evidence."—*R. & D. R. R. Co. v. Vance,* 9 So. Rep. 576. The doctrine that if defendant knew of the condition of the bridge and that the probable consequences of so maintaining it would be to injure employes is wanton negligence, overcoming contributory negligence is ruled upon by this case of *Ga. Pac. R'y. v. Lee,* 9 So. Rep. 233; also in case of *Vance* as above referred to and cases of *A. G. S. R. R. Co. v. Hill,* 90 Ala. 71 & ～ So. Rep. 90. The charges given by the court at the request of defendant and numbered 1, 2, 3, 5, 6, 8, 9, and excepted to by plaintiff, are faulty and should not have been given, because they each direct a verdict for the defendant, if the jury believe the intestate was guilty of contributory negligence, whereas in fact, plaintiff would be entitled to a verdict in spite of intestate's contributory negligence, if defendant knew the condition of the bridge previous to July, 1891, and the probable consequences would be to injure employes. The evidence showed, that the bridge had remained unchanged for over ten years, and that the conductor of the train knew the bridge was unsafe for employes on top of his train. The court erred in giving the written charge (7) at the request of defendant. The third count claimed damages by reason of the railroad not maintaining whipping straps to warn brakemen of their approach to low bridges. Witness Shaneyfelt testified there were no whipping straps at or near bridge No. 10; Witness Mothershed testified that at and prior to July 22, 1891, there were in use among well regulated and prudently managed railroads, a device known as a whipping strap, used to warn brakemen on top of cars of their approach to low bridges.—*L. & N. R. R. Co. v. Hall,* 87 Ala. 708, and *L. & N. R. R. Co. v. Hall,* 91 Ala. 112.

HEWITT, WALKER & PORTER, for the appellee.—The second ground for the motion for a new trial was the exclusion of the testimony of the witness Shaneyfelt. This evidence was offered as evidence of prior injuries to legalize testimony as to the general notoriety in the vicinity of the bridge of prior injuries suffered by brakemen in consequence of the low bridge there. The quotation of the testimony in the motion for a new trial is not correct, as appears from an inspection of the record. The witness in fact said—that he "saw negro brakeman who was climbing up ladder on the side of car knocked off by said bridge." In the case of *L. & N. R. R. Co. v. Hall,* 87 Ala. 722, in regard to such testimony in a similar case, this court has said: "Proof of general notoriety is generally admissible, as tending to prove

[Schlaff v. Louisville & Nashville R. R. Co ]

notice of a fact, when such notice is a material inquiry; but it is never competent to prove the fact itself. That must be shown by other testimony." The complaint in each count in the case at bar charged that the plaintiff's intestate was struck while riding or standing on the top of the car. There was no issue presented by the pleadings nor was there any evidence tending to show that the plaintiff's intestate was injured while ascending a ladder on the side of the car. To make the evidence material on the question of the defendant's knowledge of the low condition of the bridge, it must have appeared that the injury was received under similar circumstances. Notice that the bridge was not safe for an employe to ascend a ladder on the side of the car, while the train was passing through the bridge was no notice to defendant that it was not safe for employes on top of the cars. *Hall's case*, 87 Ala. Seeing a person killed while ascending a ladder on the side of the car was no evidence of notice on the part of the defendant that the bridge was too low for brakemen riding on top of a car under it, or in other words was no notice to defendant of the defects complained of in this action, and could not therefore be material evidence in the cause. The third ground for the motion for a new trial was the exclusion by the court of the evidence of George Shaneyfelt as to the general reputation of the bridge about employes on tops of cars being injured thereby. This witness stated that it was the general reputation in the neighborhood that ten or twelve brakemen had been knocked off because of its being too low. Manifestly such evidence of general reputation is not competent unless connected with positive proof of prior injuries. There is no such evidence in the record, and the testimony was therefore properly excluded. The ninth ground for the motion of plaintiff for a new trial was the court's refusal to exclude the testimony of the witness Stollenwerck in regard to comparative danger of riding on the side of the car and on the running board. Opinion evidence is admissible where the witness is an expert, and the matter inquired about is the subject of expert testimony, that is when the facts cannot all be presented to the court and jury, so as to make the determination of it a matter of common knowledge. The facts which rendered the act dangerous were within the knowledge of an expert railroad man exclusively, one familiar with the running of trains, the construction of freight cars, and the effect of the movement of trains on those riding at different points on top of them. This can only be determined by repeated trips on top of moving trains. Unless the danger at the side of the

car was obviously greater than at the running board, opinion evidence was competent. If it was obviously more dangerous, the defendant was entitled to the affirmative charge in the absence of such testimony and therefore its admission would be error without injury, if error at all. That such plea did not present a good defense to the action or tendered an immaterial issue, could only be relied on by the plaintiff on a motion to award a repleader. It could not be taken advantage of on a motion for a new trial.—*Georgia Pacific R'y Co. v. Propst*, 90 Ala. 5; *Crescent Brewing Co. v. Handley*, 90 Ala. 489; *Allison v. Little*, 93 Ala. 152; *McKinnon v. Lessley*, 89 Ala. 625, and cases cited. The two charges asserting that if the jury believed that the danger from the heighth and the closeness of the sides of the bridge was obvious, respectively, and if they further believed that one or the other of these defects was the proximate cause of plaintiff's intestate's death, they must find for the defendant were properly given. The undisputed testimony showed that the plaintiff's intestate, prior to his death, had been breaking on the defendant's road for four months, passing under the bridge that is alleged to have struck him every day during that time for at least three or four times a week. He was therefore chargeable with knowledge of the location of the bridge. If the danger from it was obvious, then he was chargeable with knowledge of its dangerous condition. If he was injured by such condition, he therefore voluntarily incurred an obvious danger, and cannot recover.—*Warden v. L. & N. R. R. Co.*, 10 Southern Rep. 279; *Highland Ave. & B. R. R. Co. v. Walters*, 91 Ala. 435; *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133; *Wilson v. S. & N. R. R. Co.*, 85 Ala. 269; *L. & N. R. R. Co. v. Hall*, 91 Ala. 112. The evidence showed that the post of duty was on the running board. It is true it also showed that the custom and practice of brakemen was to sit on the side of the car. The undisputed testimony showed that the bridge was safe for a man standing on the running board, much more so when he was sitting on it, and that it was not safe for a man standing on the edge of the car. No duty required his presence at the side of the car. Custom and practice could not make the assumption of such a position due care. The twentieth ground for the motion was the giving by the court of the affirmative charge on the third count, which relied on the absence of whipping straps from the bridge. This charge was properly given because under the undisputed testimony—including that of plaintiff's expert witness Mothershed—the whipping straps would have been no benefit as warning signals to a man sit-

ting down on the side of the car, being too high to strike him while in that position. The undisputed evidence shows that plaintiff's intestate was sitting down on the side of the car when the train was 200 yards from the bridge, and when it was 50 yards from the bridge, and all the evidence tended to show that he was struck while in that position. There could be no recovery under this count for the further reason that the plaintiff's intestate was chargeable with knowledge of the location of the bridge, and the accident occurred in daylight, and on a straight track for over half a mile.

COLEMAN, J.—Plaintiff's intestate was in the employment of defendant as brakeman, and came to his death, as alleged in the complaint, by reason of the negligence of the defendant. The action was founded under subdivision one of section 2590 of the Code. The complaint consisted of four counts, and the defect averred in the first, second and fourth counts, relate to the construction of a bridge over the railroad track of the defendant. It is averred in the first and second counts that the horizontal beam and timbers overhead were too low to permit a brakeman to stand on top of the freight cars and pass safely under the bridge ; and in the third count it is averred that the defendant was negligent in not providing "whip straps," or other warning signals, as the train approached the bridge. The defendant pleaded the general issue and contributory negligence. The lowest estimate of the distance between the top of the car to the bottom of the horizontal beam overhead, was that placed by the witness NeSmith, and he fixes it at five feet, eleven and one half inches, while that of other witnesses, and which is more satisfactory, fixes the distance at six feet five inches. The height here referred to was that between where the braces on either side of the bridge met the horizontal beam overhead, and not to the distance from the bottom of the braces to the top of the cars. These braces were over only a part of the sides of the car.

The evidence shows that height of deceased did not exceed five feet eleven inches. The wounds which are supposed to have caused death were either across the forehead in front, or on the back of the head. It would seem to be physically impossible that deceased could have been near the brakes or the center board of the car at the time he was struck, as the distance between the top of the car near the brake and center board was of sufficient height to have permitted deceased to pass safely under the bridge at these places. The evidence shows that braces were fasten-

ed to the upright post of the bridge, and extended obliquely upwards and were fastened to the horizontal beam. The lower ends of the braces were not more than two or three feet above the outside edge of the cars, and the distance from the top of the car to the braces increased as the braces extended upward to the horizontal beam, to which the braces were made fast.

It is evident that a man could not stand erect on top of the cars, near the outside edge, or even sit down on the outside edge of the car and pass under the braces, without great risk.   This would be apparent to a casual observation. The deceased was killed about midday, was nineteen years of age, had been in the employment of defendant continuously for four months at the time of the accident and passed over this track and under this bridge almost daily during the entire term of his service of four months.   The evidence to sustain the plea of contributory negligence was that deceased was on top of the car sitting near, or upon the edge of the car and was struck by one of the braces, the knowledge that deceased had of the location of the bridge, its construction, the position of the braces, the danger of standing or sitting on the side or edge of the car when passing under this bridge, and notice from the conductor that it was unsafe, to sleep on the edge of the cars.   The knowledge of the construction and location of the bridge charged to deceased, was that necessarily acquired from his service as brakeman, and the almost daily travel in this capacity over the road.   The evidence of defendant tended to show that the proper place for a brakeman was at the brakes or on the foot board in the center, that it was placed there for their use.   On this point the evidence for plaintiff was that it was customary for brakemen to use any part of the car that was most comfortable and convenient when not directly engaged in using the brakes.   At the time of the accident, deceased was not called to the brakes, and the place of the wound on the head, the height of the horizontal beam overhead, the position of the braces, the position of the deceased when last seen just before reaching the bridge lead to the conclusion, that deceased was sitting on the side of the freight car, with his feet hanging over the edge when he was struck.   The evidence shows that to a person in this position, "whipping straps" would be of no service.   The court was authorized under the facts to instruct the jury that plaintiff could not recover for any neglect of the defendant in failing to provide "whipping straps" as charged in the third count.

The 5th plea of defendant, was that the "plaintiff's intestate could have avoided his alleged injury by taking the simple precaution to stoop," &c.   Issue was joined upon this plea.   The joinder of issue upon this plea gave the defendant the right to introduce evidence in support of the plea, and to ask for instructions upon such evidence.—*Memphis & Charleston R. R. Co. v. Graham*, 94 Ala. 545 ; *Allison v. Little*, 93 Ala. 151-2.   Where there are good counts, and issue is joined upon an insufficient plea, and it is clear that the verdict was rendered for the defendant upon such a plea the proper practice would be to apply for a repleader in the court below.   It is not ground for a new trial.   *Ga. Pac. R. R. Co. v. Propst.* 90 Ala. 1; 18 Amer. & Eng. Encyc. of Law, 584-5.

There was no error in excluding that portion of the testimony of the witness Shaneyfelt, to which an exception is reserved.   General reputation is not competent evidence to prove the existence of a fact.   After a fact has been established by competent proof, general reputation is admissible to show that the party sought to be charged on account of the fact, had knowledge of its existence.   *L. & N. R. R. Co. v. Hall*, 87 Ala. 708.   Neither was it error to exclude the statement, that some two years prior thereto, "witness saw a negro brakeman who was climbing up the ladder on the side of the car knocked off by said bridge."   It is not negligence only, which gives a cause of action, but negligence which causes injury ; and which must be averred in the complaint to authorize the introduction of evidence. The 1st and 2d counts of the complaint, as stated above, particularly allege that deceased was on top of the cars and that it was the timbers "overhead" that struck deceased. The 3d count charges negligence in failing to provide "whipping straps."   The 4th count charges negligence in the construction of the bridge in that it "was so narrow, and the timbers and materials on the sides thereof put and kept so close to the tracks and rails of said railroad that there was great danger of brakemen while going upon and while on freight trains, being struck by the timbers and materials," &c.  .  . ; that plaintiff's intestate while in the discharge of his duties as brakeman upon one of defendant's freight trains, was struck by timbers and materials," &c.   We are not sure that we understand the position the pleader intended to place the deceased in at the time he was struck, by the averments of the count.   If it was the intention to assert that deceased was "upon," that is "on top" of the car when he was struck, it was not competent to introduce evidence,

[Schlaff v. Louisville & Nashville R. R. Co.]

that a brakeman had been struck by the side timbers, while climbing up on the side of the car two years previous. On the other hand, if the pleader intended to charge, that while deceased was "upon," that is while climbing up the side of the car in the discharge of his duties he "was struck," &c., then there is not a scintilla of proof to support the averment, and the court might well have instructed the jury under this aspect of the 4th count, to find for the defendant. Under any view we take of the 4th count there was no error in excluding the testimony. Pleadings should be clear and explicit, and the pleader may frame his complaint with as many counts, as the varying phases of the evidence may require, but each count should be simple and easily understood. Evidence which does not tend to support the plaintiff's cause of action or the defendant's plea, but can serve no other purpose than excite prejudice should be rigidly excluded from the jury. What we have said applies also to that part of the testimony of the witness Ne-Smith, which was excluded. See *Hall's* case *supra,* 87 Ala. 708.

The witnesses Stollenwerck and Stocke had been railroading fifteen years, were familiar with the duties of brakemen, and were competent to testify as to the duties of brakemen, their proper position, and the danger of riding on the edge of the cars with the feet hanging over the sides. The right of plaintiff to recover under the facts of this case as they appear in the record, conceding there was a defect in the construction of the bridge (which we do not determine) depends upon whether he was guilty of contributory negligence. We think the evidence shows that the horizontal beam of the bridge overhead was sufficiently high, to have permitted deceased to pass safely under it, if he had been at the brakes or at the center board. The evidence shows that this was the proper position of a brakeman. The evidence also shows that the braces, from the horizontal beam to the post on the sides of the bridge were so low where they entered the post, that it was dangerous for a person who was either standing or sitting on the edge of a freight car, as it passed under the braces. We can not but presume that the railroad knew how its own bridges are constructed, as to height and safety in this respect. It would be negligence after a reasonable time not to know. We think the evidence perfectly clear that deceased was sitting or standing on the side of the car when he was struck. It was in broad day light. He had been passing over this road in day light every day according to plaintiff's evidence, and not less than

three or four times a week according to other evidence, for months. He was nineteen years old. The proof shows that no duty of his, called him to either side of the freight car, but that he was riding on the side or edge for his own comfort and convenience, not in the discharge of any duty, and that his proper position was at the brakes, or center board. These facts are undisputed, and to our mind present a clear case of contributory negligence. The record is silent as to whether the deceased had been warned as to this particular bridge, but so far as regards defendant, it was safe, according to the evidence, if he exercised ordinary observation and care when passing under it. Railroads are held strictly to a proper discharge of their duties, but the law does not require, that they shall anticipate and provide against the negligence of their employes. The case probably would be different, if the facts did not show that deceased was familiar with the location of the bridge and its construction. As we have said, the accident occured in broad day light, and deceased had passed under the bridge more than fifty times in day light, within a period of four months preceding the accident in the discharge of the duties of brakeman. He was certainly chargeable with such knowledge. The case would also possibly be different, if in the discharge of his duties he had been called to occupy a dangerous place on the car. He assumed it voluntarily and knowingly. In this summary of the evidence we have left out of view, the uncontradicted testimony tending to show that just before reaching the bridge he had been seen on the edge asleep, and was warned by the conductor of the danger of sleeping in such a position. If he was not asleep, but from "inadvertence, forgetfulness, inattention or absent-mindedness," voluntarily assumed a position obviously dangerous, without any necessity for it but as a place of comfort and convenience, and from this cause was injured, he would have been guilty of contributory negligence.—*Hall's case, supra.* Custom can not excuse such negligence. The principle of law which requires employers to instruct their minor or unskilled employes as to the dangers attending the performance of their duties or in the use of dangerous machinery, does not arise in this case. There is no such negligence counted on in the complaint, and there is no proof that the accident arose from such neglect of duty, if there was such neglect. The charge requested on this question was abstract.

The plaintiff moved for a new trial, upon the ground of newly discovered evidence. The motion was properly over-

[Ex parte Burton.]

ruled for the reason that the newly discovered evidence if before the jury ought not to have changed the verdict. There is no evidence of wanton or wilful misconduct on the part of the defendant in the construction of the bridge, such as would make defendant liable, notwithstanding the contributory negligence of the plaintiff, and the newly discovered evidence would not have established such a contention. There could have been no other purpose for introducing it.

We find no error in the record available to plaintiff.

Affirmed.