# Louisville & Nashville Railroad Company v. Stutts.

*Action against a Railroad Company to recover Damages for the Alleged Negligent Killing of Employé.*

1. *Railroad company; its duty to its employés.*—A railroad company is not an insurer of the absolute safety of its ways, works and machinery, but its duty is performed by guarding against such dangers and defects as are reasonably probable to occur ; and an employé accepts, as necessarily incident to his employment, the natural and

[Louisville & Nashville Railroad Company v. Stutts.]

patent dangers in the ways, works and machinery of the railroad company, as contradistinguished from dangers arising from latent defects, which might, by the exercise of reasonable care on the part of the company or its officers, be discovered and remedied.

2. *Same; employé remaining in service after discovery of defect assumes the risk thereof.*—Where an employé of a railroad company, with knowledge of defects in its ways, works or machinery, continues in the service of said company without objection or notice to the company of such defects, he assumes the risk incident thereto; and though he may continue in the service for a reasonable time after notifying the company of said defects, relying on the company's duty to remedy or remove them, yet, if the defects are not remedied within a reasonable time, and he still continues in the service, such employé assumes the risk incident to such defects and can not recover for injuries which he receives in consequence thereof.

3. *Same; causal connection must be shown between negligence and injury.*—Where the administrator of the estate of a deceased engineer, who, at the time of his death, was in the employment of a railroad company, brings an action against said railroad company to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the stop block at the end of defendant's trestle being insufficient and dangerous, by reason of which the engine tore up said stop block and was precipitated over the end of said trestle, and it is shown that though the stop block may have been insufficient and dangerous, it was an obvious defect of which the engineer was aware, and that the accident was not caused by the insufficiency of the block, but by the high rate of speed at which the engine was being run by the intestate, and that no stop block could have been devised which would have withstood the force of the engine, the plaintiff is not entitled to recover; the causal connection between the alleged negligence in maintaining an insufficient and dangerous stop block and the injury, which is necessary to a recovery, not being shown.

4. *Same; contributory negligence.*—In such an action, where it is shown that the accident occurred at a switch which was known by the engineer to require close attention and caution, and that the trestle on which the switch was built was in good condition, but that the engineer ran upon the trestle with too great speed at the time of the accident, and was accustomed to do so, although he had been cautioned against such imprudence, that at the time of the accident he was sitting down, when, under the rules of the company and in prudence he should have been standing up and using both hands, that the engine was not regulated as it should have been, and that if it had been going at a slow rate of speed and the engineer had been observing the proper precautions the engine could have been stopped within a few feet without peril, such conduct on the part of the engineer was contributory negligence, which precludes the plaintiff from recovery.

APPEAL from the Circuit Court of Lauderdale,

24

Tried before the Hon. H. C. SPEAKE.

The appellee, George W. Stutts, as administrator of the estate of Thomas Lloyd, deceased, brought this action against the Louisville & Nashville Railroad Company, to recover damages for the alleged negligent killing of the plaintiff's intestate. The complaint contained 11 counts, which charged in various forms negligence on the part of the defendant, in that the railroad had been carelessly, defectively and dangerously built, and was, at the time of the disaster in which the plaintiff's intestate was killed, in that condition. The negligence which is specially alleged in the several counts of the complaint was as follows : One of the termini of said railroad was on a high trestle, extending over the brow of a steep hill, and there was only a weak, carelessly constructed and insufficient stop block at the end of said trestle, and that said defect had not been remedied owing to the negligence of the defendant, or of its agents or employés entrusted with the duty of seeing that the ways, works, machinery, &c. were kept in a proper condition ; that the railroad was dangerously constructed, in that, in order to shift cars on to a side track used by the defendant, it became necessary to approach dangerously near to the end of said trestle ; that plaintiff's intestate was an engineer in the employment of the defendant, and as such was bound to conform to the orders of one superior to him in authority, who was also in the service of the defendant, and said superior negligently ordered plaintiff's intestate to shift a loaded car on to the defective and dangerous switch, and in obeying said order, plaintiff's intestate, while on his engine, was carried over the end of the high trestle and killed ; that plaintiff's intestate, being an engineer in defendant's employment, was put in charge of an engine that was defective, in that its throttle valve and reverse lever were out of repair, frequently becoming unmangeable, the lever being old, worn and broken, and could not be safely used ; that the engine which was used by the plaintiff's intestate was old, worn, defective, and unfit for the purposes for which it was used ; that there were several defects in the road, switch and engine, that had not been discovered or remedied, owing to the negligence of the defendant, or of some one in its employment, whose duty it was

to see that they were kept in proper condition; that the superintendent of defendant's road, while in the exercise of the superintendency, negligently, carelessly and wantonly permitted the use of the track and engine in the dangerous conditions specified, in consequence of which plaintiff's intestate sustained the injuries which resulted in his death. There were also counts containing the same allegations of negligence and omission of duty on the part of the defendant and its employés in not keeping its ways, works and machinery in proper condition, and which alleged that the failure of the defendant to repair and remedy them was wanton, willful and intentional negligence on its part, and that the death of plaintiff's intestate was caused by such wanton, willful and intentional negligence.

There were no demurrers to the complaint, and issue was joined on the plea of the general issue, and the special plea of contributory negligence on the part of the plaintiff's intestate. The facts and circumstances of the accident were, that Thomas Lloyd, while employed as an engineer by the defendant on one of it switch engines, was engaged in carrying cars over a part of the defendant's track, for the purpose of switching them on to a side track; that in doing this, it was necessary to run beyond the switch out upon a high trestle, that was built beyond the brow of a hill; that after having taken a number of cars and placed them on the side track, as directed, he went through the switch with another car, and in some way lost control of his engine, which went with great speed against the stop block that was placed at the end of the trestle, tearing up the same, and the engine was precipitated over the precipice at the end of the trestle, and the plaintiff's intestate was killed in the disaster. The other facts of the case are sufficiently stated in the opinion. Among the other charges which were asked by the defendant, and to the refusal to give each of which the defendant separately excepted, was the general affirmative charge in its behalf.

There was judgment for the plaintiff, assessing his damages at $2,500. Defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

SIMPSON & JONES, for appellant.—1. In order to re-

cover under section 2590 of the Code of Alabama, the burden is on the plaintiff if he claims under subdivision 1. First : To prove that there was a defect in the ways, works, machinery. Second : That the injury was caused by that defect. Third : That the defect arose from, or had not been discovered or remedied owing to the negligence of the master or employer or some person in the service of the master or employer and entrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition.—*M. & B. R. R. Co. v. Holborn*, 84 Ala. 133 ; *Seaboard Mfg. Co. v. Woodson*, 94 Ala. 146 ; *M. & O. R. R. Co. v. George*, 94 Ala. 199 ; *M. & C. R. R. Co. v. Askew*, 90 Ala. 5 ; *L. & N. R. R. Co. v. Davis*, 91 Ala. 487.

2. The plea of contributory negligence is an answer to the whole complaint. When the dangerous nature of work is apparent to the servant and to the master equally, the master is not liable unless there is negligence on the part of the master, and absence of rashness on the part of the servant. He can not claim indemnity if injury might have been prevented if he had been reasonably vigilant.—Wood on Master & Servant, pp. 677-8, § 333 ; pp. 758-9-60, § 372 ; 3 Wood's Railway Law, 1461, 1481. Contributory negligence of an employé is a competent defense, unless his fellows acted so recklessly or wantonly as to raise the imputation of willful or intentional injury ; and to have this effect there must be knowledge or consciousness on his part, that the injury would probably result.—*Anniston Pipe Works v. Dickey*, 93 Ala, 418; *Carrington v. L. & N. R. R. Co.*, 88 Ala. 472 ; *Leak v. Ga. Pac. Railway Co.*, 90 Ala. 161. If there are two ways of discharging a duty, apparent to the employé, one dangerous and the other safe, or less dangerous, he must select the safe or less dangerous way.—*H. A. & B. R. R. Co. v. Walters*, 91 Ala. 436 ; *L. & N. R. R. Co. v. Orr*, 91 Ala. 548 ; *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133 ; *M. & O. R. R. Co. v. George*, 94 Ala. 200 ; *L. & N. R. R. Co. v. Hall*, 87 Ala. 709.

3. If an employé is on duty and his proper place in the discharge of his duty is safe, and he, for his own convenience, chooses to occupy another position, and is injured, he is guilty of contributory negligence.—*Schlaff v. L. & N. R. R. Co.*, 100 Ala. 377. The testimony is clear and uncontroverted that Lloyd's proper place, in

[Louisville & Nashville Railroad Company v. Stutts.]

doing this work, was standing, so that he could have full command of the engine, also that he was not standing, but carelessly sitting with his legs crossed, and when he discovered his mistake and saw he could not manage the engine in that position, he ran around to his proper place, but then it was either too late, or else he became so frightened that he lost his wits.  The rule is now settled that if an employé knows of defects, and remains in service an unreasonable time, he is guilty of contributory negligence, and can not recover.—*Ga. Pac. Railway Co. v. Davis*, 92 Ala. 300 ; *Birmingham R. & E. Co. v. Allen*, 99 Ala. 359.

NATHAN PARKINS and ROULHAC & NATHAN, *contra*.—1. The duty of the master to use reasonable care to prevent accidents and injuries to its servants, and to this end, that it is bound to furnish suitable machinery and appliances for the work to be done by the servant, and in the case of railroad companies to exercise the same care in respect to the ways, tracks and road-bed, with the appliances of each, and to use a like reasonable care in keeping them in repair, is well established upon principle and authority.  This being the duty, the failure to use this care is negligence on the part of the master ; and if injury result to the employé therefrom, unaided by contributory negligence of the servant injured, the master should respond in damages for the injury to the servant.—3 Wood's Railway Law, §§ 371, 373, 375 ; 2 Beach Law of Railways, § 91, n. 9 ; *Gardner v. Railway Co.*, 14 S. C. Rep. 143 ; *K. C., M. & B. R. R. Co. v. Webb*, 97 Ala. 157 ; *N. & W. R. R. Co. v. Gillman*, 88 Va. 239 ; *Nashville R. R. Co. v. Elliott*, 1 Cold. (Tenn.) 611 ; Beach on Contrib. Neg., 22.

2.  If in the original construction of its ways, there are defects, within the rules of care above defined, and such defects occasion injury to an employé, the master is chargeable with negligence, and consequently liable in damages, at the common law.—*Snow v. Bousatonic R. R. Co.*, 8 Allen, 440 ; *Ryan v. Fowler*, 24 N. Y. 414 ; *Stoner v. Boston &c. R. R. Co.*, 14 Gray, 466 ; *Park v. O'Brien*, 23 Conn. 339 ; *Wright v. Railroad Co.*, 25 N. Y. 565 ; *Norris v. Lichford*, 35 N. H. 271 ; *K. C., M. & B. R. R. Co. v. Webb*, 97 Ala. 157 ; *Ga. Pac. Railway Co. v. Davis*, 92 Ala. 308 ; *Tyson v. S. & N. Ala. R. R. Co.*, 61 Ala. 557 ; *Smoot v. M. & M. R. R. Co.*, 67 Ala. 18.

3. There was evidence for the plaintiff that the stop block was insufficient and dangerous. With the testimony for the plaintiff that it was unsafe, even if it had been contradicted by other evidence and opinions, it was the proper province of the jury to determine the fact, and, had such conflict existed, the court would not have disturbed their finding. But when we come to consider that the evidence of the plaintiff, that the trestle was dangerous and the stop block insufficient and unsafe, met with no tangible contradiction, it was impossible for the jury under their oaths to find otherwise.—3 Wood's Railway Law, §§ 375, 376; *Franklin Bridge Co. v. Williams*, 35 Amer. Dec. 159; *L. & N. R. R. Co. v. Perry*, 87 Ala. 395; *L. & N. R. R Co. v. Hall*, 87 Ala. 725.

HARALSON, J.—1. It may be fairly inferred from the evidence, that plaintiff's intestate, Lloyd, was an experienced railroad engineer. He had been running an engine to a freight train for the defendant for two years; and, for two weeks before his death, had been in charge of the engine and engaged in switching cars on the spur track, where the accident occurred. There is every reason to believe he was well acquainted with the engine he handled, and with the trestle at the end of the track. The trestle was a short and high one, terminating on the brow of a hill, its height, at the end, being some 20 or 30 feet from the ground. The plaintiff's witness, Thomas Hostlre, a carpenter by trade, who had built trestles and bridges, says he walked over and examined the trestle; and from its end to the switch, it was 120 feet, and was strong and well built. There is no evidence to the contrary. As to the engine, it was shown to have been in good order. It had been overhauled and repaired only a short while before, and if there was a defect about it, so as to make it unsafe for use, it was not shown. Parties who were acquainted with the engine before the accident, and up to the time it occurred, and who examined it afterwards, put this beyond dispute. The only attempt made to show anything to the contrary was by the witness Hilburn, who said he heard Lloyd say, that *something*, he did not say what, was the matter with the quadrant, and that he used to tell the witness to look out, the lever would hang sometimes, and that he heard him say to Cook, he wished him to fix the

engine. What he desired him to fix, he did not specify, but he was looking and pointing under the engine, when talking. Witness did not know whether Cook fixed it or not—nor did he say at what time the conversation occurred. It was shown to be the duty of the engineer, to look over his engine in going from and coming into the yard, and if it needed anything, to report it to the foreman, whose duty it was to repair defects and keep it in order. There was no attempt to show that there was any defect with anything under the engine at the time of the accident. If there was any defect with the quadrant, as is alleged, Lloyd did not specify it, nor was any effort made to show that he reported any repairs to the foreman, needing to be made. The presumption is, that the foreman, in the absence of proof to the contrary, did his duty in making repairs when it is shown by experts that, to the day of the accident, the engine was in good order, and we find Lloyd running it without complaint, and without apparent difficulty, to the moment of the accident. So, it may be said, that the proof is without conflict that the trestle and the engine were in good condition when the accident occurred, and the defendant was not negligent on the score of a failure to discover defects and repair them.

2. The only danger connected with the use of the trestle and engine was such as was open and obvious to any one of fair intelligence. The trestle was dangerous for no alleged reason, except that it was high and short. All high trestles, whether short or long, are obviously dangerous, when not passed with care. Railroads would be much safer without them, and their existence and danger are accepted by employer and employé alike, as necessary and unavoidable. Those witnesses who testified that the structure was dangerous, based their opinions upon its height and length, which, if properly called defects, were apparent to one person as well as to another. But, all the proof shows, without anything to the contrary, that the space between the switch and the end of the trestle—a hundred and twenty feet and four inches by measurement—though short, was sufficient within which to handle an engine, if done with care. Of an engine in good condition, it may be said, that there is at all times danger connected with its use, especially if not well and carefully handled, and no one knows this and

understands it better than the engineer who controls it, and can provide against danger so well as he. And it is well settled, in respect to these natural and patent dangers in the ways, works and machinery of a railroad company, as contradistinguished from dangers arising from latent defects—which might, by the exercise of reasonable care on the part of the company or of its officers, he discovered and remedied—that the employé accepts them as necessarily incident to his employment. A company is not bound to its employés to take precautions against all possible dangers, especially when voluntarily assumed by them at their own convenience and risk. In no case is the company an insurer of the absolute safety of its ways and machinery. Its duty is performed by guarding against such as are reasonably probable.—*Richmond & Danville R. R. Co. v. Bivins*, 103 Ala. 142; *Schlaff v. L. & N. R. R. Co.*, 100 Ala. 377; *Holland v. Tenn. C., I. & R. R. Co.*, 91 Ala. 450; *L. & N. R. R. Co. v. Boland*, 96 Ala. 632. In this case, every alleged defect in the engine and trestle, brought to view by the evidence, was open and obvious to the engineer as well as to his employer.

3. Another principle of controlling importance, which after very grave consideration may be regarded as finally settled in this court, is, that if an employé knows of defects such as are here complained of, and continues in the employment of the company, after the lapse of a reasonable time for them to be remedied or removed, he assumes this additional risk—even if not incident to his original employment. We had better quote the rule as established: "If the employé while engaged in the service acquires knowledge of any defects in the materials, machinery or instrumentalities used, and notice thereby of an increased risk of danger, and afterwards continues in the service, without objection or notice to the employer, he assumes the increased risk himself; but he may notify the employer of the defect, and continue in the service for a reasonable time, relying on the promise of the employer to remedy the defect, yet, if the defect is not remedied, within the promised time, his further continuance in the service is at his own risk, and he is guilty of contributory negligence.—*Birmingham R. & Electric Co. v. Allen*, 99 Ala. 359; *Geo. Pac. Railway Co. v. Davis*, 94 Ala. 309; *L. & N. R. R. Co. v. Hall*, 87

[Louisville & Nashville Railroad Company v. Stutts.]

Ala. 708 ; *Eureka Co. v. Bass*, 81 Ala. 201.

Here, as we have seen, if there were any latent defects about the engine and trestle, which the defendant failed to discover and remedy, it is not shown. If the engineer discovered any and reported them, which were not remedied, that fact is not shown. The only defects brought to light and complained of, were patent, and understood by the engineer as well as by the company, and he continued in its service, notwithstanding. This, without more, is sufficient to foreclose his complaint.

4. It is said, however, that the stop block at the end of the trestle, was insufficient and dangerous. If it was, it belonged to the class of open, obvious defects, of which the engineer was well aware, while in the employment of defendant, and at the time of his service, and to which he raised no objection, and we might dismiss this complaint with what has already been said. But, let it be added, that the proof as to the block and its insufficiency and danger has reference to it specially as an appliance for stopping a moving engine. It was shown, that stops at the end of a track, were generally intended for cars, and not for moving engines. For the one purpose they were generally sufficient, and for the other insufficient. The evidence, without conflict in its tendencies, shows that no stop-block that could have been devised and placed at the end of this trestle, could have withstood the weight and force of this engine, propelled at the speed it was moving on the occasion of the accident. Plaintiff's own witness, Thomas Hostlre, who was corroborated by other witnesses, testified, that he never saw a stop-block that would stop an engine with a head of steam, without wrecking it; and, from the evidences on the timbers at the end of the trestle, and the condition of the bolts, he would say, that the engine struck the block with great force, and that no sort of stop-block would have halted it. If sufficient resistance had been offered by it, the engine would have run off the track, or torn down the trestle. If this evidence be true, and there is nothing to contradict it, it was no defect about the stop-block that caused the trouble, but rather, the weight of the engine and the resistless force with which it was thrown against it by the engineer. The causal connection between the block and the injury was lacking.—*Western Railway of Ala. v. Mutch*, 97 Ala. 194.

5. And further still, without stopping to review the evidence, of which there is much, it may be said, it shows without conflict, that the conduct of the engineer in controlling his engine on the occasion of the accident, contributed proximately to his death. All agree that the switch was what is known and called a "close place," which requires the close attention and caution of an engineer; and yet, we see nothing to warrant the belief, that the trestle, in the good condition it was shown to have been, and with such an engine as the engineer was handling, might not, in the exercise of prudence on the part of the engineer, have been used for an indefinite time, without liability to accident, from any known or apparent danger. It was shown, that the engineer ran upon the trestle with too great speed to comport with safety. It appears that his course in this regard had been observed, and Hatheway, the engine hostler of defendant's yard at the time, assumed, as he expressed it, "to get after Lloyd about going on the switch so fast," when he replied : "You see that hickory limb at the end of the trestle? If she goes over, I will catch on that;" and the witness added : "He went on the switch and on the trestle faster than I liked. I would often get off. I told him I was afraid of him." He sat on his seat also, with his left foot under him and his right extended over his box. All the witnesses, who were competent and who testified on the subject, say he ought, in the exercise of prudence, and in order to have his engine under control, to have stood up, and used both hands, one on the reverse, and the other on the throttle lever. It was shown, the book of rules of the company required the engineer in close places to stand, in order to handle his engine the better, and this he should not have neglected.—*Warden v. L. & N. R. R. Co.*, 94 Ala. 279. He had both hands on the throttle lever. The cylinder cocks were closed, as the proof tends to show, and they should have been open. The experts say, again, that going at a slow rate of speed, and observing the foregoing precautions, he might have stopped the engine within a very short distance, and some of them say, within a foot or two, and reversed and returned without risk of peril. But, failing in these precautions, so important to be exercised at such a time and place, he lost control of his engine, probably because confused, and

went forward with great and ruinous force against the stop and over the precipice. Our conclusion is, after a careful review of the evidence, that it shows without any conflict, that deceased was careless, almost to recklessness, and thereby brought the disaster on himself, in which he lost his life.

8. There is no proof to show any willful, wanton and intentional negligence on the part of defendant, as averred in the complaint.

Whether considered as a common law action, or one under the employés act, the plaintiff has failed to make out a case. The proofs justified the general charge for the defendant, and it should have been given. The judgment below will be reversed and the cause remanded.

Reversed and remanded.