SOUTHERN RY. CO. v. HARDIN.

(Circuit Court of Appeals, Fifth Circuit. December 3, 1907.)

No. 1,733.

1. MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—RELEVANCY—ISSUE OF CONTRIBUTORY NEGLIGENCE.

Where a plaintiff, who was a conductor of a freight train on defendant's road, in order to set a brake to hold a section of the train which he supposed had been cut off from running downgrade, went upon the end of a coal car next to a disabled engine, which was fastened behind such car by chains only, and was injured by the car and engine coming together, evidence to show that other brakes which might have been more safely used were out of order was admissible on an issue of contributory negligence.

2. APPEAL AND ERROR—REVIEW—RECORD—INSTRUCTIONS.

Reversible error cannot be predicated upon an extract from the charge of the court, although standing alone it would be erroneous where the other parts of the charge by which it was presumptively qualified are not contained in the record.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 2936–2939.]

3. TRIAL—DIRECTION OF VERDICT—CONFLICTING EVIDENCE.

Direction of a verdict on a particular count of a declaration is not warranted where issues of negligence and contributory negligence are joined on such count, and the evidence as to essential facts under such issues is conflicting.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 376–395.]

4. SAME.

Where a count of a declaration was based solely on an allegation of negligence in a certain particular, and there was no evidence to support such allegation, but direct evidence disproving it was uncontradicted, it was error to refuse to direct a verdict for defendant on such count.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 376–389.]

5. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

Where a cause was submitted to the jury on two counts of the declaration as to one of which such submission was erroneous, a verdict and judgment for damages in favor of plaintiff cannot be attributed solely to the count properly submitted so as to render the error harmless.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

William T. Hardin brought his suit in the circuit court of Cleburne county, Ala., claiming $20,000 damages of the Southern Railway Company for personal injuries received by the plaintiff while in the defendant's employ. On the petition of the defendant, the cause was removed to the Circuit Court of the United States for the Eastern Division of the Northern District of Alabama. The complaint is framed under the employer's liability act of Alabama. As finally amended, it consisted of six counts. It alleges that the plaintiff was employed as a conductor of a freight train on the defendant's railway, and that while engaged in setting, or attempting to set, brakes on a certain car, he was caught between a disabled engine and the car upon which he was engaged in setting the brakes, and thereby received the injuries complained of. The specific act of negligence alleged in the first count is that of the defendant's engineer in charge of the locomotive of the train, in that he negligently caused or allowed the car on which the plaintiff was setting the brakes to move toward or against said disabled engine. The second count of the complaint varies from the first count only in that it avers that the negligence causing the injury was the negligence of the fireman of the locomotive engine.

The third count charges a defect in the condition of the ways, works, etc., viz., the locomotive engine, without specifying the defect. The fourth count is the same as the third, except that the defect alleged was in the dead or disabled engine, without specifying the defect. The fifth count charges wanton or intentional injury by the defendant's engineer. The sixth count is the same as the fourth count, except that it undertakes to specify the defect in the disabled engine, and avers that there was no pilot and no drawhead on the disabled or dead engine. The affirmative charge was given for the defendant on all these counts, except the first and third. The defendant pleaded the general issue and contributory negligence.

The evidence in behalf of the plaintiff, which was his own testimony, was to the effect: That on January 16, 1906, he was in the employ of the defendant as a freight conductor, running between Heflin, Ala., and Atlanta, Ga. That about 10 o'clock p. m. on that day he was making up the train at Heflin to go to Atlanta. His train consisted of about eight or nine cars, and a dead engine, which had come from some point west of Birmingham, and was billed to Spencer, N. C. This engine had been in a wreck, and had the pilot and drawhead knocked off, and was otherwise injured. Plaintiff had orders to transport this engine to Atlanta. He chained the dead engine by the cylinder saddle to a coal car with a chain five or or six feet long. The engine was large, and the boiler was so high that the bumper of the coal car would pass under the boiler. The plaintiff's train at the time of his injury was on the main line. Plaintiff desired to cut out a car of merchandise, and put it back on the side track, called the "house track." He had sent out his flagman in one direction, and one brakeman in another direction, to flag trains that might be approaching. He instructed his remaining brakeman to put on the brakes when the train stopped, and then uncouple the cars. The train was backing down the track. The plaintiff testified that just as the train stopped he saw the brakeman raise the cut-off lever to uncouple the car, and the road at that point, in the direction in which the train was backing, was downgrade, and, if the train was cut into without the brake being applied, there was danger that the rear of the train would run on down the grade. That, when the train stopped, plaintiff got on the coal car next to the dead engine to set the brakes, and the front part of the train crept back, and caught him between the dead engine and the coal car, and that his injuries resulted therefrom. The court permitted plaintiff's counsel to ask the plaintiff this question: "Was there a brake on the caboose?" The defendant objected to this question, on the ground that it was immaterial, irrelevant, and incompetent. The court overruled the objection, and the defendant then and there duly excepted. Plaintiff answered: "There was a sorry brake on the caboose." The defendant moved to exclude this answer, its motion was overruled by the court, and the defendant excepted. The court also permitted plaintiff's counsel to ask the witness: "What was the condition of the brakes on the caboose and the other cars?" Defendant objected to this question, on the ground that it called for immaterial and irrelevant testimony. The objection was overruled, and defendant duly excepted. The witness answered: "There was no brake on the dead engine. There was a sorry brake on the caboose, and the brakes on the other cars were not in working condition." The plaintiff further testified that the position of the engineer was on the right-hand side, and that he got up on the right-hand side to apply the brakes; that the night was a dark night; that his lantern was setting on the sill of the car by his feet.

On cross-examination he testified substantially as follows: "When I first went to the dead engine, I had it chained to the coal car. It had been fastened to a flat car, and had jerked the drawhead out. The boiler of the engine was about 5½ feet above the track. The sill of the coal car, on which I stood when I undertook to apply the brake, was about 3½ feet above the track. I told the brakeman to let the train stop, put on the brakes, chock the wheels, and then cut off the car. The wheels had not been chocked, and, while I thought the train had been cut into by the brakeman, as a matter of fact it had not. I did not inform the engineer when I went upon the coal car to apply the brakes. I did not inform anybody that I was going to put on the brakes. I could see that the dead engine was chained to the coal car. It had been done under my direction. I knew how it was done. I knew the boiler of the engine was higher than the coal car, so that the sill of the coal car

could pass under the boiler of the engine, so that the car would bump against the boiler. There was nothing to hold the dead engine and the coal car apart. A chain held them together. I knew there was a probability of the train moving backward. I knew the condition of the dead engine and the coal car, and the possibility of their coming together. I thought the brakeman had cut the train in two, and acted upon this presumption, but it was erroneous. He had not cut it in two. * * * I don't think any of the crew knew that I was trying to set the brakes except the brakeman. I do not believe the engineer knew it, or the fireman. They did not have any reason to know that I was between the dead engine and the coal car."

W. A. Cunningham, a witness for the defendant, testified substantially as follows: "I was the fireman on the engine of the train of which the plaintiff was conductor. At the time of his injuries, I was doing nothing towards running the engine, and had no control of it. The train was moving backwards at the time of the injury. I did not see or hear any signal. All I heard was a man holler. The train then stopped. It had not stopped from the time it was moving backward until the man hollered. It did not stop and start again almost immediately before he hollered. There was nothing wrong with the engine that I know of. It was in good working condition."

S. L. Ray, witness for the defendant, testified substantially as follows: "I have been engaged as a locomotive engineer for 10 years. I was engineer of the train on which plaintiff was conductor at the time of his injury. I had gotten a signal to pull out of the side track onto the main line, and had started. The signal was from the rear of the train, which is the place for the conductor. I had a signal to back down on the main line. The next thing I heard was some one holler, and I stopped the train. I had no signal after the back-down signal was given until I heard the man holler. The train had been rolling down the main line all the while after the back-down signal had been given. It had not stopped. The first time it stopped was when I heard the holler. I could have seen any signal that was given, and I had not seen any. I was looking in that direction. The engine was all right, and in good working condition, and had no defect. I did not know that the plaintiff was between the car and the dead engine trying to apply the brakes. He did not give me any notice that he was going between the dead engine and the car. I had no way of knowing it, unless he had told me or sent me word. I had nothing to do with fastening the dead engine for transportation. That had been done by the plaintiff and his crew. There was nothing to keep the car and engine from coming together; nothing to hold them apart. Any one could tell by looking at them, seeing them together in that condition, that there was nothing to hold them apart. It was open and apparent. Any one could see that the drawhead and pilot were gone. It looks to me like a man of ordinary observation could see this. The accident occurred about 10 o'clock at night. It was a dark night. I did not know where the conductor was just before he was injured, except that he was down towards the rear of the train. I did not know what he was doing. I did not know that he was between the coal car and the dead engine." On cross-examination, the witness Ray testified, in part: "When I heard the man holler, I put the air brakes on. I did not put any sand on the track. I was backing. That engine was not equipped to put sand on the track when backing. I do not know of anything that would expedite the stopping of the train more than applying the air brakes. It stops just as quick to apply the brakes as to reverse the engine." On redirect examination he testified: "The application of the brakes in my judgment brought the train to a standstill as quickly, if not more quickly, than the reversal of the engine would have done, and brought it to a standstill steadily, and without a jerk."

This was substantially all the evidence as to the circumstances attending the injury. The court in the oral charge instructed the jury as follows: "If you believe that a prudent man, with the knowledge of the plaintiff, gained either directly or from having seen the defects in the engine in connection with all of the circumstances in this case, would have gone in between the car and the dead engine and undertaken to put up the brake, and he was injured thereby, then the plaintiff would be entitled to recover." To this part of the oral charge the defendant duly reserved an exception. The defendant requested the court in writing to charge the jury as follows:

"(1) If the jury believe the evidence, they cannot find for the plaintiff under the first count of the complaint.

"(2) If the jury believe the evidence, they cannot find for the plaintiff under the third count of the complaint.

"(3) The court charges the jury that if they are reasonably satisfied from the evidence that the plaintiff undertook, in the nighttime, without notice to the engineer or person in charge of the engine of the train, to set the brakes on the car next to the dead or disabled engine, which had been so damaged as to permit the car to run under or against the boiler of said engine, the defective condition of which was known to the plaintiff at the time, and that the danger of so doing would have been known to a reasonably prudent man of the plaintiff's experience in railroad service, or that such danger was known to the plaintiff, and that said car did run under or against the boiler of said engine, and the plaintiff's injuries resulted therefrom, and that such act on the part of the plaintiff proximately contributed to the injury, the jury must find the issues in favor of the defendant."

The foregoing charges were asked separately and before the jury retired. The court refused each of the charges separately, and to the refusal of the court to give each of said charges the defendant then and there duly reserved a separate exception.

The jury rendered a verdict for the plaintiff, and the defendant has sued out this writ of error.

Wm. P. Acker, for plaintiff in error.

D. H. Riddle and G. R. Harsh, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and BURNS, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). Aside from a nice question of pleading hardly affecting the real merits of the case and on which the authorities are conflicting and this court is divided, the plaintiff in error contends that the trial court erred (1) in permitting the plaintiff's counsel against the defendant's objection to interrogate the plaintiff as to the condition of the brakes on the caboose and other cars of the train; (2) in the oral charge of the court as set out in the above statement; (3) in refusing to give the affirmative charge for the defendant under the first count of the complaint; (4) in refusing to give the affirmative charge for the defendant under the third count of the complaint; (5) in refusing to give each of the requested charges as to the effect of plaintiff's contributory negligence.

1. The evidence admitted as to the condition of the brakes upon the caboose and certain other cars was not admissible for the purpose of any recovery by reason of the bad condition of said cars and brakes, for no issue thereon was presented by the pleadings; but an issue was presented as to the plaintiff's negligence in mounting the car just ahead of the dead engine, an alleged dangerous place, for the purpose of setting the brake on that part of the train supposed to have been cut loose and ready, if not already started, to move downgrade. Therefore evidence of the condition of the brakes on the caboose and other cars accessible was admissible to show more or less necessity for the plaintiff to use the particular brake in order to hold the supposed detached cars from running away. The evidence might have been limited, but counsel does not appear to have asked instructions to that effect.

2. The judge charged the jury orally, and to this part of his charge, to wit, "If you believe that a prudent man, with the knowledge of the plaintiff, gained either directly or from having seen the defects in the engine in connection with all of the circumstances in this case, would have gone in between the car and the dead engine and undertaken to put up the brake, and he was injured thereby, then the plaintiff would be entitled to recover"—the plaintiff in error duly excepted. This extract taken by itself and under the pleadings and issues of this case is not sound; for it would allow the plaintiff below to recover without showing negligence on the part of the railway company and would make the company an insurer (see Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; L. & N. R. R. Co. v. Stutts, 105 Ala. 368, 17 South. 29, 53 Am. St. Rep. 127); but we cannot predicate reversible error upon it, because the charge is not given in full, and we are unable to say that, taken in connection with, and modified and explained by, the context, the excerpt is so misleading as to warrant a reversal. See 2 Mayfield's Dig. (Alabama Courts) p. 561, and cases there cited. This conclusion is strengthened by the presumption that the excerpt was given in connection with the plea of contributory negligence, and we may well further presume that the court satisfactorily charged the jury as to the necessity of establishing the defendant's negligence as a preliminary to plaintiff's recovery. And see Myers v. Sternheim, 97 Fed. 625–626, 38 C. C. A. 345; Blashfield Instructions to Juries, §§ 374, 375.

3. The affirmative charge on the first count was properly refused, because the issues on this count were the negligence vel non of the railway company through its engineer in causing, or allowing, the car on which the plaintiff was attempting to set the brake to move towards or against the disabled engine; and the contributory negligence vel non of the plaintiff in mounting the car next ahead of the disabled engine under the established facts in the case. In determining both issues the important question was whether at the time the plaintiff mounted the car the train was at a standstill or moving backwards. If it was standing still, the plaintiff could have mounted the car next ahead of the disabled engine for the purpose of setting the brake, and not necessarily have negligence in so doing imputed to him. If the train, however, was moving backward when he mounted, negligence might well be imputed to him. If the train had stopped when the plaintiff mounted the car, and then without orders or notice and while the plaintiff was in the dangerous place the engineer started the train backwards, then negligence might well be imputed to the defendant. The plaintiff testified:

"We had to cut out a car of merchandise that we had on our train, and put it back on the 'house track.' I instructed my brakeman to put on the brakes when the train stopped, and then uncouple the cars. The train was backing down the track, and just as it stopped I saw the brakeman raise the cut-off lever. The road at that point in the direction in which the train was backing was downgrade, and a train was due from that direction. I heard the train blow. If the train was cut in two without the brake being applied, there was danger that the rear of the train would run downgrade. There was nothing to keep the train from running off down the grade, and colliding with the train approaching in that direction after the train had been cut. I told the brakeman not to cut the car off until the train stopped. I gave the stop

signal to the engineer, and the train came to a stop. There was no slack in the train that I could see. I don't think the train would have come to a stop until the slack had run out. When I got up on the end car to set the brakes, the first part of the train crept back and caught me between the dead engine and the coal car. The train had stopped still before I undertook to set the brakes."

Ray, the engineer, testified:

"I heard no signal after the backdown signal was given until I heard the man holler. The train had been rolling down the main line all the while after the back-down signal had been given. It had not stopped. The first time it stopped was when I heard the holler. I could have seen any signals that were given and I had not seen any. I was looking in that direction."

Cunningham, the fireman, testified:

"The train was moving backward at the time of the injury. I didn't see or hear any signal. All I heard was a man holler and the train then stopped. It had not stopped from the time it was moving backwards until the man hollered. It did not stop and start again almost immediately before he hollered."

Under the conflicting evidence and on a vital point, the question was one for the jury, and an affirmative charge in favor of the defendant was not warranted.

4. In the third count the negligence charged was that the locomotive engine hauling the train was defective. On this point the plaintiff offered no evidence whatever. The fireman, Cunningham, for the defendant, testified:

"There was nothing wrong with the engine that I know of. It was in good working condition."

Ray, the engineer, testified:

"The engine was all right and in good working condition, and had no defect."

And there was no evidence to the contrary.

On this count the defendant asked the affirmative charge, and it was refused; and this, we think, constituted reversible error. The counsel for the defendant in error contend that, though the court may have erred in refusing to give the affirmative charge on the third count, the same is not reversible error, because there was ample evidence to sustain the verdict on the first count and the verdict should be imputed to that count, and the case affirmed. This does not seem to be the practice in Alabama courts (Highland Ave. & Belt Railroad Co. v. Miller, 120 Ala. 535–546, 24 South. 955), nor is it warranted in this court in cases of this kind. Besides, we may note that the evidence on the first count was not so clearly in favor of the plaintiff below, in fact, its weight was the other way, that we can say that the damages awarded by the jury were based wholly or in part on the first count.

As we reverse the judgment below, other assigned errors need not be considered. They may not be material or even arise on a new trial.

The judgment of the Circuit Court is reversed, and the cause is remanded, with instructions to set aside the verdict of the jury and award a new trial.