Bobbie Lee SUGGS, Mrs. Betty Suggs Bryant, and Fannie Doris Suggs Carter, Appellants,

v.

NATIONAL HOMES CORPORATION, Appellee.

No. 19372.

United States Court of Appeals Fifth Circuit.

Sept. 6, 1962.

John G. Kopp, Waycross, Ga., for appellants.

S. F. Memory, Jr., Waycross, Ga., for appellee.

Before CAMERON and JONES, Circuit Judges, and DeVANE, District Judge.

DeVANE, District Judge.

This automobile accident case was tried to a jury. Following an extended trial, the jury returned a verdict in favor of defendant. This verdict is amply supported by the evidence in this case and no complaint is made by appellants that the verdict is contrary to the evidence.

Under these circumstances, it is the duty of the Court to affirm the judgment unless the Court finds that the trial Judge, during the trial of the case, committed reversible error. Realizing this, appellants' assignments of error are based entirely upon their claim that the Court committed error (1) in refusing to admit in evidence certain ordinances of the City of Blackshear, Georgia, and (2) in giving certain charges and in refusing to give certain requested charges of appellants. After a brief statement of the facts in the case, the Court will consider these assignments of error in the order in which they appear in appellants' brief.

Appellants are the children of Archie Suggs and Dessie Suggs, both deceased. Archie Suggs died May 20, 1960, as a result of injuries he received in a rear-end collision with appellee's tractor-trailer on May 9, 1960, on Main Street in the city limits of Blackshear, Georgia. Dessie Suggs, widow of Archie Suggs, filed suit on July 26, 1960, against appellee for the wrongful death of Archie Suggs. Dessie Suggs died on November 15, 1960, before the case was tried and on motion

appellants, her children, were made parties.

Appellee manufactures prefab houses and ships them by tractor-trailer trucks all over the country. On May 9, 1960, one of appellee's trucks was going south loaded with a house on Georgia Highway 121 and proceeded to a point within the city limits of Blackshear, Georgia, where it met another one of appellee's tractor-trailer trucks, which was unloaded and going back north. It was about 10:00 o'clock at night. The southbound truck signaled the northbound truck to stop. Both trucks stopped at a point on Main Street, the same being a paved street in the City of Blackshear, Georgia. These trucks were approximately 50 feet long and 8 feet wide. The street on which these trucks stopped is somewhere between 35 and 38 feet in width with a curb on each side. Each truck parked in its lane of traffic, the southbound truck in the west lane and the northbound truck in the east lane of traffic, each near the curb.

Archie Suggs was a policeman, employed by the City of Blackshear on duty at this time and was riding in the front seat of a police car with Ernie Courson, another policeman, who was driving the car. As the police car proceeded south on Main Street, it passed the northbound truck on its left and struck the rear of the southbound truck, injuring both occupants of the police car. As stated above, Archie Suggs later died on May 20, 1960, and Ernie Courson recovered.

The two parked trucks of appellee were approximately 150 feet apart and were unattended at the time of the collision. The drivers of these trucks were engaged in a conversation at the rear of the northbound truck.

There was conflict in the evidence as to whether the bright lights of the northbound truck were left burning when it was parked and there was conflict in the evidence as to whether there were lights on the rear of the southbound truck.

Police Officer Courson, the driver of the police car, testified that the head-lights on the parked truck headed north were bright, but he could not testify as to whether they were on bright or dim and he would not testify that they blinded him so that he could not see. He also testified that he could not say that the headlights on the parked truck going north affected his vision, because he said he always slowed down when he met bright lights.

Another witness testified that when he drove to the scene of the accident shortly after it happened, he could see the truck parked on the east side of the street for several hundred yards and that the lights from this truck did not prevent him from seeing the other parked truck on the west side of the street. Luther Johnson, ambulance driver, testified that when he approached the scene of the accident, he was not blinded by the lights on the parked truck headed north which faced him as he drove to the scene of the accident.

There was conflicting testimony at the trial of the case as to whether there were rear lights on the southbound truck prior to the accident. There was testimony by witnesses that arrived at the scene of the accident promptly thereafter that the rear lights of the truck were burning when they arrived at the scene.

This evidence clearly made a case for the jury and the case was appropriately submitted to the jury, which, as stated above, returned a verdict in favor of appellee.

The first assignment of error of appellants relates to the refusal of the Court to admit two ordinances of the City of Blackshear, Georgia, relative to parking. When first tendered, the Court refused to admit these ordinances and then changed his mind and reversed his position and ruled that he was going to allow a portion of these ordinances to be admitted in evidence, but later he ruled them out entirely.

This ruling of the Court is of great importance to appellants for the reason that the chief negligence of appellee as claimed by the appellants is the violation of these ordinances in the parking of its truck on the streets of Blackshear in

violation thereof. It is the contention of appellants that these ordinances made it unlawful for the trucks to be parked at that point on the street of the city.

The ordinances referred to were of the common type where the city marks off parking space in the business section of the city and requires that automobiles be parked in designated marked off parking space. It is agreed by the parties that in the vicinity where these trucks stopped, there was no designated parking space along the street.

■ Appellants' interpretation of the ordinances is to the effect that the ordinance defining the method of parking in the business section of the city within designated parking spaces made it unlawful for anyone to park an automobile at any point along the highway where there were no designated parking spaces. This certainly is a strained construction of the ordinance. It is entitled to no such interpretation from this Court and the Court finds and holds that the parking of these trucks under the circumstances did not violate these ordinances and the Court was amply justified in taking them away from the jury.

■ The second assignment of error involves the question of the refusal of the Court to give certain charges requested by appellants and the Court giving certain charges to which the appellants took exception. The trial Judge in this case, as do most trial Judges in like cases, refused to give certain of the requested charges of appellants, but in substance gave his own charge covering the same subject matter. The Court has carefully considered the charges requested by appellants and those given by the Court and finds and holds that the Court's charge in each instance was sufficient and that no error was committed in refusing to give the charges as requested by appellants where the same subject matter was covered in charges given by the Court.

[3] Appellants requested the Court to charge the jury that Georgia "law does not require the driver of a motor vehicle under ordinary circumstances to be able to stop the vehicle within the range of his vision." The Court properly refused to give this charge for the reason that there is no testimony in the record that justified the giving of such a charge.

This accident occurred on a city street in Blackshear about 10:00 o'clock at night and no charge is made that the police officer in control of the police car was driving at a rapid or reckless rate of speed. In addition, these two trucks were separated by 150 feet and the 200 feet distance between the point where the police car passed the headlights of the northbound truck and collided with the rear of the truck involved in the accident gave the police officer ample time to see the parked truck in front of his car and to avoid the collision. There was also approximately 30 feet of street space between the truck and the far side of the street, so under these circumstances, the Court committed no error when it refused to give this charge.

■ Appellants requested that the Court charge the jury that "it is a matter of common knowledge that the glare of bright headlights of an automobile on the public highway at night will temporarily impair the vision of the driver of an approaching automobile." The Court refused to give this requested charge and the evidence was such that the action of the Court in so refusing was proper. The police officer driving the automobile refused to state while on the stand that the headlights of the northbound truck affected his vision in any way.

■ Appellants also requested the Court to instruct the jury as follows (R. 196):

"It is the statutory duty of the driver of a motor vehicle along a public highway in this state, whether actually moving or parked, to have such vehicle equipped with a suitable device for dimming or changing the focus of the headlights thereon so as to prevent dangerously glaring or dazzling rays from effecting the eyesight of drivers of approaching ve-

hicles, and it is likewise the duty of such driver to dim his headlights or change their focus when necessary to prevent such dangerously glaring or dazzling rays from effecting the eyesight of the driver of an approaching vehicle."

Based upon the evidence in the case, the Court was justified in refusing to give this charge, because it would have contributed only to confusion in the case. There was testimony in the case to the effect that these trucks were so equipped and this evidence made this charge unnecessary.

■ Appellants find fault with the Court's summation of the question before the jury in this case. The Court has carefully considered this summation given by the District Judge near the end of his charge and can find nothing wrong with it. During the summation, the Court on one or two occasions referred to the deceased (Suggs) as the plaintiff, but at other points in the charge the Court cleared up this confusion and made it clear that what he said was applicable to the deceased and the jury certainly would have understood what the Court was talking about if the Court had not even gone thus far to straighten the matter out to the jury. This slip of the tongue was not reversible error.

■ Appellants take exception to a charge given by the Court in which the Court pointed out to the jury that the deceased Suggs was in law charged with the responsibility of being on the lookout prior to the happening of this accident so as to avoid it, and if the jury found that he was not on a proper lookout, that his negligence in that respect would affect the amount of his recovery if they found him entitled to recover. Appellants contend that this charge in effect made the two policemen in the automobile engaged in a joint enterprise and that any negligence on the part of Courson could be charged to Suggs.

The Court finds that this is a far fetched interpretation of this charge. The Court did not charge the jury that these two policemen were on the night of the accident engaged in a joint enterprise. The evidence in the case shows that the driver of the automobile was not on the lookout and did not even see the truck he hit until Suggs gave an outcry right at the instant the police car collided with the parked truck. That clearly indicated that neither the driver nor Suggs were on the lookout. Their attention was directed to something else at the time and they drove into that parked truck without either one of them seeing it in the highway ahead of them until almost the instant they hit it.

■ Appellants also take exception to the charge of the Court with reference to comparative negligence. Under all the facts in this case, this charge was appropriate. It strengthened instead of weakening appellants' case by indicating that the question of appellee's negligence was with the jury and no error was committed by the Court in giving it.

The evidence in the case fairly and squarely raised the question for the jury's determination as to whether the negligence of the driver of the police car and the failure of Suggs to be on the lookout was the sole proximate cause of this accident or whether or not the jury could find that appellee was also guilty of some form of negligence under all the evidence in the case. The Court was careful in his efforts to make it clear to the jury that before the defendant (appellee here) could be held liable in this case, it was necessary for the jury to find that the defendant was guilty of negligence. The verdict of the jury clearly shows that the jury found the defendant guilty of no negligence and the evidence in the case amply supports this finding.

The Court is unable to find any reversible error in the case and the judgment of the lower Court is

Affirmed.