**SOUTHERN RAILWAY COMPANY, Appellant,**

v.

**Mrs. Opal SHEALEY, Appellee.**

**No. 24053.**

United States Court of Appeals Fifth Circuit.

Aug. 9, 1967.

John W. Maddox, James D. Maddox, Matthews, Maddox, Walton & Smith, Rome, Ga., Sanders, Mottola & Haugen, Newman, Ga., for appellant.

Harold L. Murphy, Tallapoosa, Ga., for appellee.

Before RIVES and DYER, Circuit Judges, and JOHNSON, District Judge.

DYER, Circuit Judge:

This is an appeal from a judgment entered upon a jury verdict awarding damages to appellee for the death of her husband. We affirm.

About 9:40 in the morning of a clear day in 1964 appellee's husband was proceeding in his automobile on an unpaved road. He was struck at a grade crossing three or four miles west of Tallapoosa, Georgia, by appellant's train and was killed instantly.

Appellee claimed that appellant was negligent and that the crossing in question was either public (Count 1) or private (Count 2) under Georgia law. Appellant denied these claims and asserted decedent's negligence. The evidence adduced at trial was conflicting on all points.

The testimony concerning the nature of the crossing revealed that it was located on land formerly owned by appellee and permitted access to acreage still so owned. In 1957 appellee and her husband sold and deeded to appellant a strip of land 300 feet wide, which was used by appellant to straighten its track line. In the deed, the right of ingress and egress across the strip was reserved. After the track was relocated someone constructed a new crossing over the line, covered it with loose gravel like that used as ballast on appellant's track, and connected the new crossing with the old road. There is some dispute whether the crossing is at the old location or some 500 feet to the north.

The unpaved road to which the crossing was connected had been in existence for over forty years. It extended from U. S. Highway 78 southwesterly to a point near the Tallapoosa River known as "Hooper's" where there was an abandoned water stop on the railroad's main line. The road crossed the track there at what was called "Hooper's Crossing," and here the accident occurred. Years ago the road extended westerly about a mile where it rejoined the highway in Alabama. The road was used by decedent to get to his fields, and for many years by the public going into the land to hunt and fish and to haul sand and gravel from the river. The county maintained the road until 1957.

The testimony concerning appellant's negligence showed that the freight train, approximately a mile and a quarter in length, consisted of four diesel units, 13 loaded cars, 110 empty cars and a caboose. The train crew testified that, at the time of the accident, the train was going 42 miles per hour.[1] Appellant's expert put the speed at 40 miles per hour, but appellee's expert put it at 60–70 miles per hour. The engine had a governor set to limit its speed to 63 miles per hour.

The train crew testified that a regular crossing whistle signal was begun about 1200 feet east of the crossing and that this was changed to an emergency signal just before impact with the car. However, a witness for appellee testified that he was within hearing distance of the crossing at the time of the accident, but heard no whistle. The railroad approached the crossing from the east around a curve and through a deep cut in a mountain. Evidence of sight distances of an approaching train from an approaching automobile varied from zero to 646 feet from a point 21 feet south of the track. There was no crossing warning sign or blow post.

At the conclusion of appellee's case appellant moved for a directed verdict on the ground that appellee had failed to prove that the crossing was either public or private. The court reserved ruling. The same motion was made at the close of all of the evidence and the court again withheld ruling. After the verdict the court denied the motions. Motions by appellant for judgment n. o. v. and in the alternative for a new trial were also denied and this appeal ensued. Appellant urges that the district court erred in charging the jury, in the reception of certain evidence, and in ruling upon the weight and sufficiency of the evidence.

## I.

### The Jury Charges

The appellant requested that the court charge concerning the requisites for the creation of a public road by dedication and prescription; the decedent's duty to avoid being struck by the train; that the jury should determine whether more alertness was required of decedent because of his obstructed view; that ordinary care might have required decedent to stop before driving on the track; and that there was no absolute duty to stop the train on decedent's approach. The court refused these proposed charges.

We pretermit a discussion of whether each of the submitted charges may have been correct as an abstract principle of law because we are satisfied that the several requests to charge were substantially covered by the court in other instructions given to the jury at the request of appellant.[2] The refusal to give a requested charge is not error where the same subject matter is adequately covered by the charges given. Suggs v. National Homes Corp., 5 Cir. 1962, 308 F.2d 105; Home Insurance Co. of N. Y. v. Tydal Co., 5 Cir. 1946, 152 F.2d 309. The court properly refused the requested charges as being repetitious and thus avoided placing undue emphasis on particular issues, theories or defenses. Moore v. Louisville & Nashville R. R., 5 Cir. 1955, 223 F.2d 214.

Over appellant's objections the court charged the substance of Ga.Code Ann. § 94–506 which provides *inter alia* that railroads must erect blow posts 400 yards from the crossing of a public road and that the engineer on reaching the post signal the train's approach by blowing two long blasts, one short blast and one long blast, "said blasts to be loud and

---

1. The speed limit, set by the railroad, for that area is 50 miles per hour.

2. Appellant complains that the court's charge concerning the creation of a public road by dedication or prescription was deficient because these were technical terms that the court should have defined but failed so to do. Considering the instructions as a whole, we are not persuaded that this charge was insufficient. Moreover, the charge submitted by appellant on this point contained a clear implication that an acceptance of a dedication by public authorities must be in express terms. This is not the law of Georgia. Atlantic Coast Line Ry. Co. v. Sweatman, 81 Ga.App. 269, 58 S.E.2d 553.

distinct." Appellant objected on the ground that this code section was inapplicable because there was no proof that a public road was involved, and further that the law was unconstitutional for vagueness.

Appellant insists that "the only pertinent part of the road involved [in this case] was that part where the collision occurred, i. e., the short section of road where it crossed appellant's tracks at the time of the collision." Then alluding to the fact that the "new" section was constructed in 1959 or 1960 and that the status of the road must therefore be determined from what happened with respect to the new section since that time, argues that the road could not have become a public road by dedication or prescription. We do not agree.

■■ Whether the crossing was relocated in the same place or only "approximately" or "near" its original location is of no consequence. The fact is that the new crossing simply took the place of the old crossing. This being so, the character of the entire road must be considered in determining its proper status. We are convinced that the long existence of the road, its use by the public, and its maintenance by the county for a period of time, raised an issue as to whether it had become a public road by dedication or prescription. Atlantic Coast Line Ry. Co. v. Sweatman, 1950, 81 Ga.App. 269, 58 S.E.2d 553; Louisville & Nashville R. R. Co. v. Hames, 1940, 135 Ga. 67, 68 S.E. 805; Penick v. Morgan County, 1908, 131 Ga. 385, 62 S.E. 300. Since the jury could have found the existence of a public road, it was not only proper but necessary for the court to charge concerning the duty of the railroad to signal its approach to a public crossing of its trains, with the admonition which followed that the question of whether the statute was actually violated was a question for the jury.

■ Finally the appellant urges that the requirement in the statute to give "long," "short," "loud," and "distinct" blasts of the whistle is vague because there is no standard to show what length blast is "long" or "short," what intensity of a blast is "loud," or what quality of a blast is "distinct," and that it is therefore unconstitutional.

■ We are concerned here with a rule of civil conduct, not with the due process and equal protection standards applicable to a criminal case. In this instance "the standard * * * is the practical criterion of fair notice to those to whom the statute is directed." Southern Ry. Co. v. Brooks, 1965, 112 Ga.App. 324, 145 S.E.2d 76, 79. We know that blowpost laws are universally in effect throughout the country and it takes no semanticist to understand the usual, accepted and ordinary meaning of the statutory words.

II.

Admissibility of Evidence as to Speed of Train

Tallapoosa, Georgia, is two to four miles from the crossing where this accident occurred. On appellee's case in chief the court refused to permit testimony concerning the train's speed at Tallapoosa on the ground that it was a place and time too remote to be relevant. Thereafter it was shown that the railroad line was on a downgrade from Tallapoosa to the crossing in question and that this was the ruling grade (the greatest incline) between Birmingham and Atlanta. The train crew and appellant's expert put the train's speed at the collision site at 40 to 42 miles per hour. The court then permitted appellee, over objection, to develop by cross examination of the crew that the speed of the train at Tallapoosa was about 30 miles per hour. On rebuttal appellee, over objection, was permitted to introduce independent evidence that the train's speed at Tallapoosa was 60 to 70 miles per hour. Appellant argues that the rebuttal testimony was not in rebuttal to testimony properly allowed in the first instance and that "one inadmissibility does not justify or excuse another."

■ It is true that at the outset the court sustained an objection concerning the train's speed at Tallapoosa be-

cause of remoteness, but this did not preclude it from changing the ruling at a later time when it became apparent that such evidence did have probative value. The evidence was attempted to be elicited initially from the first witness to take the stand without any predicate as to relevancy. Thereafter it was shown that the train consisted of four diesel units and 124 cars; that it was over a mile and a quarter long; that for two to four miles before the accident it was descending the most pronounced grade on that part of the line; and that after the emergency brakes were set at the crossing the train travelled some 2,000 feet before it came to a stop. There was a wide divergence of opinion and factual testimony as to the speed of the train at the point of impact. Considering all of this evidence we cannot say that the speed of the train at Tallapoosa was too remote or irrelevant. Admissibility of such evidence depends upon the facts of each case and rests largely in the discretion of the district court. Atlantic Coast Line R. R. Co. v. Pidd, 5 Cir. 1952, 197 F.2d 153.

## III.

### Weight and Sufficiency of the Evidence

As we have pointed out, there was sufficient evidence to raise an issue for jury determination of whether or not the road in question was a public road. The evidence was even stronger that the crossing was a private way established by either an express grant or by implication of law.[3] We are unimpressed with appellant's assertion that the description of the reservation of an easement in the deed from appellee to appellant was so deficient that the document was ineffective to establish a grant of a private way. The fact is that the roadway was located over appellant's tracks at or near the point it traversed them before their relocation, with full knowledge and without objection of the appellant.

Finally, the appellant submits that because the verdict could not be based upon a finding that the road involved was both public (Count 1) and private (Count 2) and since it cannot be ascertained whether the general verdict was grounded in the baseless count, the verdict cannot stand.[4] The premise, that the road could not be both public and private is correct, but the conclusion that because of this the verdict cannot stand is incorrect for there was evidence that could have supported either finding. The court took pains to point out in its charge: "In the event that you find the way in question was a public road, you would proceed under Count One to determine whether the plaintiff is entitled to recover, and you would not concern yourselves further with the pleadings under Count Two. Should you find said way to be a private road, you would disregard Count One, and you would proceed to determine whether the plaintiff is entitled to recover under Count Two. A recovery under both Counts would not be authorized." Under the circumstances this was the proper and the only way to submit the case to the jury without prejudicing the rights of either party. If the evidence under either count of the complaint was sufficient to authorize a verdict, it is not subject to attack. Whitaker v. Creedon, 1959, 99 Ga.App. 228, 108 S.E.2d 335.

---

3. Ga.Code Ann., § 85–1401 (1933).

4. Appellant relies upon Wilmington Star Mining Co. v. Fulton, 1907, 205 U.S. 60, 27 S.Ct. 412, 51 L.Ed. 708; E. L. Cheeney Co. v. Gates, 5 Cir. 1965, 346 F.2d 197; Christian v. Boston & M. R.R., 2 Cir. 1946, 109 F.2d 103; Erie R.R. v. Gallagher, 2 Cir. 1918, 255 F. 814; Southern Ry. v. Hardin, 5 Cir. 1907, 157 F. 645; Chicago & A. Ry. v. Cox, 8 Cir. 1906, 145 F. 157. These cases are inapposite. They stand only for the proposition that if a cause is submitted to a jury on two or more counts of a declaration, as to one of which the submission was erroneous because a directed verdict should have been granted for lack of evidence, a verdict in favor of the plaintiff cannot be attributed solely to the count properly submitted so as to render the error harmless.

We find no merit to the other errors asserted by appellant. The case was fully and fairly tried. The judgment of the district court is

Affirmed.